BURNS *et al.* v. KEAS *et al.*

| 21 | 257 |
| 79 | 602 |
| 21 | 257 |
| 90 | 103 |
| 21 | 257 |
| 91 | 321 |
| 21 | 257 |
| 112 | 679 |
| 112 | 680 |
| 21 | 257 |
| 121 | 348 |
| 21 | 257 |
| 124 | 606 |
| 21 | 257 |
| f125 | 451 |

1. Practice: AGREED STATEMENT OF FACTS CONSTRUED. An agreed statement of facts in a suit for the recovery of real estate set forth, "the plaintiffs are entitled to recover the whole of said real estate, excepting the improvements, unless prevented by the facts hereinafter stated." *Held*, to be a submission of the question of title to the real estate, aside from the improvements.

2. Homestead: OCCUPANCY AFTER DEATH OF WIFE. After the death of the wife the husband has the right to occupy and possess the whole homestead, and this right exists without reference to which owned the legal title, or whether or not there was issue.

3. —— TO WHOM IT DESCENDS. Under section 2296, Revision of 1860, the homestead descends to the issue of either husband or wife, whichever may have the legal title.

4. Dower HUSBAND. Upon the death of the wife without issue, the husband is, under section 2490, Revision of 1860, entitled to but one-half of her entire estate for dower and as heir-at-law.

*Appeal from Dubuque District Court.*

FRIDAY, OCTOBER 12.

ACTION to recover the possession of real property known as the south part of lot 593 in the city of Dubuque and particularly described in the petition. The cause was tried in the District Court upon an agreed statement of facts. These facts, so far as necessary for the determination of the point made in the court, are, in substance, as follows: Margaret McCabe, a widow without children, being the owner in her own right, of the part of lot in controversy, intermarried with Edward Keas, a widower with six children. After the marriage, Edward Keas, with his own means, erected a dwelling and other improvements on said lot in dispute. The said Margaret and Edward, together with the children of the latter, moved into said dwelling and continued to occupy the premises

HARVARD LAW SCHOOL LIBRARY

as a homestead up to June, 1863, when Margaret died, without issue, leaving Edward and his children, three of whom are under twenty-one, in possession of the property in controversy. They continued to occupy the premises as a homestead up to September, 1863, when Edward also died, leaving his children in possession of said premises. The plaintiffs are the sisters and nieces, and only heirs at law of Margaret, and the defendants are the children and only heirs at law of Edward.

The District Court rendered judgment in favor of the plaintiffs for one undivided half of the property, including improvements. The defendants' appeal.

*Wilson & Doud* and *Monroe & Deery* for the appellants.

*H. A. Wiltse* and *B. W. Poor* for the appellees.

COLE, J.—I. The agreed statement which is part of the record and must be so considered, sets forth that "the plaintiffs are entitled to recover the whole of said real estate, excepting the improvements, unless prevented by the facts hereinafter stated, &c." We construe this to be in effect only a submission of the question of title to the real estate, aside from the improvements; leaving the question as to the right to the improvements, or compensation for them under the occupying claimant law, to be hereafter settled. It follows, therefore, that so far as the judgment determines the right of plaintiffs to an undivided half of the improvements, it must be reversed, and the question as to the right of the parties to the improvements, left open for future adjustment.

*1. PRACTICE: agreed statement of facts.*

II. The next question in order, arising upon the transcript in this case, is as to the rights of the respective parties to the property by reason of its homestead character, and the law applicable

*2. HOMESTEAD: occupancy after decease of wife.*

thereto. This is a question of no little difficulty, and we regret that the counsel did not more elaborately consider and discuss it in their argument. We have before had occasion to realize the fact that while our homestead statutes have a most beneficent basis and design, they nevertheless are greatly wanting in perspicuity and completeness. This is so fully true that to effectuate the beneficent purposes of the statute, and place a reasonable construction upon them as a whole, the courts are almost driven to that line of decision sometimes. not inaptly called "judicial legislation."

It is provided by the Revision, section 2279 (1247), that " a conveyance of the homestead by such owner is of no validity unless the husband and wife, if the owner is married, concur in and sign such conveyance." The counsel for appellants claim, relying mainly therefor upon this section, that, upon actual occupancy of the homestead by the husband and wife, the legal title is thereby vested. in them jointly, and they continue to hold the same by a title and tenure not very unlike joint tenancy at the common law with its incident of survivorship. In this view we cannot concur. We need not stop to express all the reasons for our dissent, but only to remark that the homestead statute is simply a statute of *exemption* rather than a law conferring affirmative rights.

The provisions of the homestead law under which this controversy arises are as follows:

" SECTION 2295 (1263). Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, until it is otherwise disposed of according to law.

" SECTION 2296 (1264). If there is no such survivor, the homestead descends to the issue of either husband or wife, according to general rules of descent, unless otherwise directed by will, and is to be held by such issue

exempt from any antecedent debts of their parents or their own.

"Section 2297 (1265). If there is no such survivor or issue, the homestead is liable to be sold for the payment of any debt to which it might at that time be subjected if it had never been held as a homestead.

"Section 2298 (1266). Subject to the rights of the surviving husband or wife, as declared by law, the homestead may be devised like other real estate of the debtor."

Upon the death of Mrs. Margaret Keas, then, according to the provisions of section 2295, the husband had the right to possess and occupy the whole homestead. This right is regardless of the fact as to which, the husband or wife, is the owner of the fee; and also regardless of the fact of issue or no issue.

But the more difficult question arises under section 2296, *supra;* and that is, does it mean that "the homestead descends to the issue of either husband or wife" whichever may have issue? Or does it mean that "the homestead descends to the issue of either husband or wife," whichever may have the legal title?

*3 —— to whom descends.*

If we adopt the former view, and hold that it descends to the issue of whichever may have issue, and the case should present itself, which not unfrequently occurs, where both husband and wife have issue by former marriages, which class of children would take? There is no possible clue in the statute, from which this question could be elucidated, or any language or indication upon which a decision, one way or the other, could safely rest. And if we go one step further, and take a case, which not very unfrequently occurs, where the husband and wife each have issue by a former marriage, and then also have issue by their joint marriage, the question of right to the homestead in such case, under the former view, becomes

wholly impossible of intelligible determination under the language of the statute.

But under the latter view, that the homestead descends to the issue of either husband or wife, whichever may have the legal title, the rights of the respective issue become very certain and clear of determination. The section (2296) does not expressly declare that it shall descend to the issue of the owner of the fee or legal title to the homestead; nor does it declare that the homestead shall descend to the issue of *both* husband and wife, which is the most general character of issue, but to the issue of *either* one or the other, "*according to the general rules of descent.*" Now, by adopting the latter view or construction, as above suggested, the statute is relieved of serious difficulty of interpretation. The homestead, under such view, descends to the issue of the owner of the fee. If there is no such issue it then descends to the heirs at law, being, however, in such case, according to the provisions of section 2297, first liable to be sold for the payment of any debt of the ancestor owner. This construction has the merit of both reason and justice.

There may be, however, another possible construction or meaning of the language of section 2296, and that is, that "the homestead descends to the issue of either husband or wife," whichever may survive. There are several objections to this construction. One is, that thereby, of necessity, the *title* must be held to pass to the survivor upon the death of the owner of the fee, and through such survivor to the issue, according to the general rules of descent. And this would completely neutralize or render meaningless section 2295, which confers upon the survivor the right to possess and occupy the whole homestead until it is otherwise disposed of according to law; for if the title passed to the survivor, the right to possess and occupy would certainly flow from it, and the section

conferring that right would be useless. This construction would, therefore, be in conflict with the well settled rule, that in construing a statute effect should be given to every part.

And again, by holding that the homestead descends to the issue of either husband or wife, whichever may survive, we are driven to effectuate an unnatural as well as unreasonable and unjust result in very many cases. For instance: suppose the husband owner of the fee dies, seized and possessed of the homestead, leaving a widow and children; the widow takes the title by survivorship and marries again; afterward she dies, having continued to possess and occupy the homestead until her death, leaving her husband with children by a former wife, but none by her. Of course the homestead, upon her death, passes to her surviving husband, and upon his death to his issue, who are aliens to the blood and family of him who earned and provided it, and from whose creditors it was exempt. To hold that the homestead statute effectuated such an unnatural and undesirable, not to say repulsive and unjust, result, would tend to defeat its purposes and object, and repress the desire and effort to secure homesteads, which the statute was designed and calculated to inspire. The facts of this case are not very unlike the cases just supposed.

But further, under the view we are now considering, section 2298 would also be regarded nugatory. That section declares that, subject to the rights of the surviving husband or wife, as declared by law, the homestead may be devised like other real estate of the testator. Now, if upon the death of the owner of the fee, the title passes to the survivor, what could the owner devise? Simply nothing; because he or she could only devise "subject to the right of the survivor," which rights are, according to the view suggested, to take the absolute title to the home-

stead. Hence, no effect whatever can be given to section 2298.

For these and many other reasons, which neither our time nor space in the report will allow us to here state, we are of the opinion that Edward Keas, the surviving husband, did not, simply *as such survivor*, take the title in fee to the homestead, upon the death of his wife, Margaret Keas; and, as a consequence, that the defendants did not take the fee simple title thereto by descent from their father, Edward Keas.

This construction does not at all interfere with the effect to be given to, or the right under sections 2288 and 2289, which provide that the owner may change the limits of his or her homestead, or may change the same entirely, subject to the liens, &c., upon them, as provided by those sections. The term "owner," under homestead statutes, has been liberally construed, and never limited to owner in fee. Whatever title, therefore, the owner may have, be it occupancy, tenancy, freehold or fee, it is within his or her control to hold, change or alien at pleasure, according to the law of the land.

III. The next and only remaining question for our determination in this case, arises under our statutes of distribution. By the Code of 1851 it was provided: "Section 1410. If the intestate leave no issue the one-half of his estate, including the dower of his wife, shall go to his father, and the other half to his wife, and if he leave no wife nor issue, the whole shall go to his father." And by section 1421, it was enacted that all the provisions in relation to the widow of a deceased husband should be applicable to the husband of a deceased wife. This latter provision has been re-enacted, in modified phraseology, by Laws of 1852–3, chapter 61, page 97, Revision, section 2479, and is still the law in substance. See Laws of 1862, chapter 151, page 173.

*[margin note: 4. DOWER: husband.]*

By chapter 63, section 2 of the Laws of 1858, page 96, section 1410 of the Code of 1851, *supra*, was repealed, and there was enacted in lieu thereof as follows : " Section 2. If the intestate leave no issue, the one-half of his estate shall go to his parents, and the other half to his wife ; if he leave no wife the portion which would have gone to her shall go to his parents." This section is still in force. Rev., § 2496.

The precise question made in this case is, whether Edward Keas, upon the death of his wife Margaret, leaving no issue, took his dower interest, which, under chapter 151 of Laws of 1862, was one-third in fee, and then also took one-half of the remaining two-thirds, thereby giving him two-thirds of the estate ; or, whether he took one-half only of the entire estate.

The words " including the dower," contained in parentheses in section 1410 of the Code of 1851, are omitted in the statute now in force. See Rev., § 2496. This omission tends very considerably to fortify the construction claimed by appellant in this case,·to wit : that Edward Keas took both by dower and descent. But the omission of these words was not the object of the statute. By the first statute the half of the estate went to the *father*, but by the last, the half goes to the *parents*. This is the material change effected by the last statute, and the reasonable construction of the language, with the words in parentheses omitted, is the same as when they are inserted ; and their omission may, therefore, be fairly attributed to the desire on the part of the draftsman and legislature to express their meaning and will in as concise and brief terms as practicable.

Without further extending the discussion, we are of the opinion that Edward Keas took one-half only of the estate of his deceased wife, and that such half descended, on his death, to the defendant. The fact that his dower

had not been assigned prior to his death, does not affect their right in this case.

The plaintiffs are therefore entitled to judgment for an undivided half of the real estate in controversy, exclusive of the improvement. And the question of improvements is left open for future adjustments. The appellees will pay the cost of this appeal.

Reversed.

Lowe, Ch. J., non-concurring.