## McGuire v. Brown et al.

1. **Will:** DOWER: LIFE ESTATE. The acceptance by the widow of the bequest of a life estate in her husband's lands does not bar her right of dower.

2. ——: ——: ——. Where a will provided that, in the event of the widow's marriage, testator's real property should "take the course designated by existing laws," *held*, that upon the occurrence of that contingency she was entitled to one-half of the estate for dower and as heir at law.

3. **Descent:** DEATH OF PARENTS. The testator's parents being dead at the time of his decease, their share of his estate is distributed in the same manner as it would have been if their death had occurred after they came into possession of the property.

4. ——: ILLEGITIMATE CHILD. An illegitimate child inherits from the mother, and the fact of her death before the descent cast will not prevent the child from inheriting her share of the estate.

5. **Will:** DEBTS OF ESTATE. The testator having directed the payment of all just debts out of his estate, and bequeathed all his personal property to his wife, and she, acting as executrix, having discharged an incumbrance upon the realty to which she became entitled under the will: *Held*, that the incumbrance was properly discharged from the personalty and that other heirs, taking realty, could not be compelled to contribute.

*Appeal from Polk District Court.*

FRIDAY, DECEMBER 10.

PLAINTIFF brings this action for the partition of certain real estate in which he claims to be the owner of the undivided two-thirds, and that the defendant, Triphena Brown, is the owner of the undivided one-third. The court rendered judgment that plaintiff was owner of an undivided one-fourth, and the defendant of three-fourths. Plaintiff appeals. The facts of the case appear in the opinion.

*Wright, Gatch & Wright*, for appellant.

Under "existing laws" the widow took nothing as heir, for it was only when the husband died *intestate* that the widow

became more than a dowress. (Rev., § 2495; *Dobson v. Dobson*, 30 Iowa, 410.) A devise during widowhood creates in law an estate for life. .(1 Washb. on Real Prop., 103; *Hamilton v. Buckwalter*, 2 Yeates, 397; *Roseboom v. Van Vechten*, 5 Denio, 425.) Had the widow died unmarried her heirs could not have claimed one-half the estate (*Dobson v. Dobson, supra.*) If she takes one-half as heir, this includes her dower. (*Burns v. Keis*, 21 Iowa, 263; *Nicholas v. Purcell*, Id., 266.) The Supreme Court has expressly refrained from deciding whether the rule that the devise is not in lieu of dower has been affected by the legislation of the state. (*Cain v. Cain*, 23 Iowa, 39.) The testator will not be presumed to have given a contingent estate in what he expected the widow to take absolutely. (*Myer .v. Myer*, 23 Iowa, 71.) When certain parts are omitted from a re-enacted or revised statute, the omitted parts are considered annulled. (*Ellis v. Paige*, 1 Pick., 45.) When the statute says "illegitimates shall inherit from the mother," it is with the same intent as the Virginia statute on which ours is founded, which declares that they shall "be capable of inheriting on the part of the mother." (*Garland v. Harrison*, 8 Leigh, 380.) The law makes the personalty the primary fund for the payment of the debts. (2 Redf. on Wills, 865; *Laverty v. Woodward*, 16 Iowa, 5.) The executrix was bound to apply the personalty to the payment of debts. (*State v. Mason*, 21 Ind., 173.)

*Barcroft, Given & Drabelle*, for appellee.

Independent of statutes, devises to heirs of the same estate as they take by descent were void; the heirs took as such and not as devisees. (2 Wash. on Real Prop., 3d ed., 400; 3 Id., 459.) There must be such an inconsistency in the widow's claim for dower and her right to the estate devised as to defeat other provisions of the will, to deprive her of both. (4 Kent's Com., 3d ed., 58; *Clark v. Griffith*, 4 Iowa, 408; *Sully v. Nebergall*, 30 Id., 339.) The property of the decedent must go by devise or descent, and the intention or wish of the testator has no effect, unless expressed in the will. (*Den v. Gaskin*, Cowp., 657; *McIntire v. Cross*, 3 Ind.,

4.14; *Crane v. Doty*, 1 Ohio State, 283; *Needles v. Needles*, 7 Id., 444; *Bane v. Wick*, 14 Id., 509.) A bastard has no inheritable blood. (2 Bouvier's Inst., 354.) At common law the general personal estate not expressly or by implication exempted, was to be first applied to the payment of debts. (2 Jarman on Wills, 546.) Descended estates were to be applied in exoneration of devised estates. (Id., 556.) As between the legatees and the heirs, the undevised real estate must be applied in exoneration of the specific legacies. (*Warley v. Warley*, Bailey's Eq. (S. C.), 393.)

MILLER, CH. J.—The facts of this case are agreed upon by the parties, and are as follows:

"1. That on the 24th day of August, 1864, one George McGuire died, leaving the following will:

"Know all men by these presents: That I, George McGuire, of the city of Des Moines, in the county of Polk, state of Iowa, being in the possession of all my senses, with a view of the uncertainty of human life, do make this last will and testament:

*First.* I will and order that all of my just debts and expenses of my burial be paid out of my estate.

*Second.* I bequeath to my beloved wife, Triphena McGuire, absolutely, my homestead, in the city of Des Moines, where I now reside.

*Third.* I bequeath to my said wife all of my other real property, except that which is hereinafter disposed of otherwise, during the period of her widowhood, and, in the event of her marriage, the same is to take the course designated by existing laws.

*Fourth.* I bequeath to my said wife all of my personal property, of every description, except such as is hereinafter otherwise disposed of.

*Fifth.* I bequeath to my beloved niece, Edith McGuire, the sum of one hundred dollars.

*Sixth.* I bequeath to the Masonic Fraternity the sum of one hundred dollars, to be divided equally between the Knight

Templars, the Blue Lodge and the Chapter, located at Des Moines.

And I hereby appoint John Mitchell, of Polk county, executor of my last will and testament. (*Duly witnessed and signed.*)

2. That said McGuire died without issue, leaving a widow, Triphena McGuire, since intermarried with the defendant, G. B. Brown.

3. That said George McGuire was the son of John and Sarah McGuire, both of whom were dead at his decease.

4. That said George left surviving him the plaintiff, his brother, John McGuire, another brother, and one Martha L. Gibbins, an illegitimate daughter of his deceased sister Sarah McGuire.

5. That prior to the commencement of this action, the said John McGuire had conveyed all of his interest in the property in question to the defendant, Triphena Brown.

6. That prior to the commencement of this action, the said Martha L. Gibbins had conveyed to plaintiff whatever interest she had in said real estate.

7. That said John McGuire, Sarah McGuire and plaintiff were the children of said John and Sarah McGuire, all other children of said parents being dead at the decease of said parents without leaving children, and the said Sarah McGuire also died before either of her parents, leaving no child except the said illegitimate child. That the executor named in the will failed to qualify, and that thereupon, and on the 13th day of December, 1864, the defendant, Triphena Brown, then McGuire, was appointed executrix of said estate, and duly qualified and proceeded to execute said will, and administer upon said estate, said will having been on the 3d day of October, 1864, duly probated and allowed in the county court of Polk county, Iowa.

9. That the defendant, Triphena Brown, accepted the devise under said will made to her.

10. That the homestead devised to her is not any part of the property in question.

11. That the personal property of the estate of said decedent was appraised at thirty-two hundred and twenty dollars.

12. That prior to his death, the said George McGuire being indebted to one Hemmingway, executed with his wife, the said Triphena, a mortgage upon the said real estate to secure said indebtedness. That at his death a portion of said indebtedness was unpaid, and that subsequently the said Triphena paid off said indebtedness. The mortgage was for the unpaid portion of the purchase money of said land. That a note, executed on the 10th day of February, A. D., 1863, payable two years after date, secured by said mortgage, was purchased by the said Triphena Brown, at its maturity, as hereinafter shown, and the said Triphena paid in satisfaction of the expenses of the last sickness and funeral of the said George McGuire, the sum of two hundred and seventy-eight and 90-100 dollars.

And paid on the indebtedness proved up against said estate the sum of $632 62-100, on the —— day of ——, A. D., 1865.

The mortgage to Savery is paid off.

That October 7, 1865, the said Triphena McGuire, now Brown, made her final report as executrix of the estate of George McGuire, deceased, in which she recited the payment of $1,100 to one Hemmingway, being the amount of the note above mentioned, as a part of the unpaid purchase money on said real estate. And, to prove said report, exhibited as a voucher the receipt of said Hemmingway, dated February 4, 1865, as follows:

$1,100.00. Received, February 4, 1865, eleven hundred dollars, in full of my claim against the estate of George McGuire, of Triphena McGuire, executrix of said estate.

H. N. HEMMINGWAY.

And on said February 4, 1865, said Hemmingway acknowledged the satisfaction of said mortgage on the margin of the records thereof.

It is admitted that Triphena Brown, being sworn, would say that when she took up the note, secured by mortgage on said premises, she was told by Hemmingway, who held it, that

if she paid it she could hold it against the estate, and she paid it with that understanding, intending to hold it as her own against said estate."

1. The third clause of George McGuire's will reads as follows: " I bequeath to my said wife all of my other real property, except that which is hereinafter disposed of otherwise, during the period of her widowhood, and, in the event of her marriage, the same is to take the course designated by existing laws." The land in controversy is the same that was covered by this bequest. It is ·agreed by counsel for both parties that, upon the marriage of the widow, this bequest terminated, and that the lands embraced therein were to be disposed of according to the law in relation to the descent of real property. It is unnecessary to discuss or determine the question, whether in such case the persons entitled to the land took by descent or by purchase, under the will; for the terms of the will direct that the land shall take the course designated by the law.

It is insisted by the plaintiff that, upon the marriage of the widow of the testator, the land then descended to his heirs, and that she was not to be considered as an heir, and, therefore, not entitled to any share in the lands thus descending.

It is argued that since she accepted the bequest contained in the will, giving her a life estate in the lands, she was not entitled to dower therein, and since she determined her life estate by her own act, her entire interest in the lands was then gone.

In the first place, the· acceptance by the widow of a bequest of a life estate in her husband's lands does not bar 1. WILL: her right of dower. *Sully v. Nebergall*, 30 Iowa, dower: life estate. 339; *Mether v. Wiley*, 34 Id., 214, and cases cited. If, therefore, the acceptance of the provision of the will, giving the widow the lands during her widowhood, did not have the ·effect to bar or extinguish her dower right therein, the determination of her life estate could not do so. Her marriage had the effect to put an end to her estate in the lands held by her under the provisions of the will during her widowhood, and left them to be

disposed of by the law, to the same persons and in the same shares as if the will had been silent in reference to the lands or to their disposition.

This, it seems to us, was the manifest intention of the testator, deducible from the language used. In the event of the marriage of the widow, the land was to " take the course designated by existing laws." Now, as the law does not provide for any such particular emergency, but does make provision for the descent and distribution of real property not disposed of by will, it is clear that the testator intended that this property, in the event of his widow's marriage, should be distributed according to the laws establishing the rules of descent of the real property of an intestate. These being the only laws on the statute book in reference to the course of descent of lands of a decedent not disposed of by will, these only were intended by the testator. And since there is nothing in the will showing an intention to exclude the widow, upon her marriage, from taking, as an heir, a portion of the land then to be disposed of according to law, she would be entitled to the same portion or share of the land in controversy as she would have been if it had not been mentioned at all in the will, or no will had been made.

The provisions of the statute applicable to the question before us (Revision of 1860), are as follows:

" § 2436. Subject to the rights and charges hereinbefore contemplated, the remaining estate of which the decedent died seized shall, in the absence of other arrangements by will, descend in equal shares to his children.

§ 2437. If any one of his children be dead, the heirs of such child shall inherit his share in accordance with the rules prescribed, in the same manner as though such child had outlived his parent.

§ 2495. If the intestate leave no issue, the one-half of his estate shall go to his parents, and the other half to his wife; if he leave no wife, the portion which should have gone to her shall go to his parents.

§ 2496. If one of his parents be dead, the portion which would have gone to such deceased parent shall go to the sur-

viving parent, including the portion which would have gone to the intestate's wife, had she been living.

§ 2497. If both parents be dead, the portion which would have fallen to their share, or to either of them by the above rules, shall be disposed of in the same manner as if they or either of them had outlived the intestate and died in the possession and ownership of the property thus falling to their share, or to either of them, and so on through ascending ancestors and their issue."

George McGuire having died without issue, the only persons entitled to his estate, under section 2495, are his parents and his wife, the parents taking one half and the wife the other half. The sections following provide for the distribution of the share going to the parents in case one or both be dead at the time of the descent cast, but no modification or change is made affecting the share of the wife if she be living. Her share is one-half of the estate descending. It is here insisted by counsel for defendant that this share is one-half of the estate remaining after giving the widow her dower. In other words, that the widow was first entitled to one-third, in fee simple, as dower, since that was not barred by the provisions of the will, and that she is also entitled to one-half of the remaining real estate. This question, however, has been settled in *Burns v. Keas*, 21 Iowa, 257, where it is held that under this section the husband or wife is entitled to but one-half of the estate for dower and as heir-at-law of the decedent. In this case Mrs. Brown upon the termination of her life estate became entitled under the law to one-half of the land in controversy, and in this her dower was included.

II. The agreed facts show that the parents of George McGuire, the testator, were both dead at the time of his decease; their share, therefore, is to be disposed of under section 2497, above, "in the same manner as if they, or either of them, had outlived the intestate (testator) and died in possession and ownership of the property thus falling to their share." In other words, their share descended to their children and to the child or children of any.

2. ——: ——.
——.

3. DESCENT: death of parents.

deceased child. It further appears that the plaintiff and John McGuire, sons of the deceased parents, were living at the time of the testator's death, and that Sarah McGuire, (deceased) was the only other child of such parents that had left any child. This child was illegitimate, and if she did not inherit any portion of the share descending to the parents of her mother, then the plaintiff and John McGuire each took one-half of such share, being one-fourth of the whole. On the other hand, if this illegitimate child inherited the share her mother would have taken, had she been living, then the plaintiff, John McGuire, and this illegitimate child each inherited one-third of the share of the deceased parents of the testator, or one-sixth of the whole of the land in controversy. In order, therefore, to determine the interest of the plaintiff, and also what interest Mrs. Brown acquired by her purchase of the share of John McGuire, we must ascertain whether or not Martha L. Gibbins inherited the share of·her deceased mother in the property.

Section 2441, of the Revision, provides that "illegitimate children inherit from the mother, and the mother from the children." This section constitutes an illegitimate child a lawful heir of the mother, for the capacity to inherit being conferred it follows that the child is in effect an heir to the mother and the mother an heir to the child. Section 2437, before set out, provides that where any of the children of an intestate be dead the heirs of such child shall inherit his share in accordance with the rules prescribed in the same manner as though such child had outlived his parent." Now it is conceded by counsel for defendant that if Sarah McGuire had been alive at the time of the death of the testator she would have taken one-third of the share descending through her parents, that she would have taken one-sixth of the estate in controversy. That this view is correct admits of no doubt. It is equally clear, and is admitted, that in such case, upon the death of Sarah McGuire intestate, her illegitimate daughter would inherit this share.

Now, under section 2497, the parents, for the purpose of the descent of the property, are to be considered as having

4. ——: illegitimate child.

outlived George McGuire and died in possession of one-half of his estate. By section 2437, Sarah McGuire, one of the children of the deceased parents, is to be deemed to have out-lived her parents for the purpose of enabling her daughter, Martha L. Gibbins, to inherit from her the share she would have taken from her parents in the estate of George McGuire; Martha L. Gibbins being the heir of her mother who is to be deemed to have outlived her parents, Martha takes the share of her mother in the same manner as though she had in fact outlived them. In this view, of the correctness of which we have no doubt, it follows that Martha L. Gibbins inherited an undivided one-sixth interest in the land in controversy, and that the plaintiff acquired that interest by purchase, which, added to a like interest held by him in his own right, entitles him to a one-third interest in the whole. Mrs. Brown being entitled to one-half in her own right and one-sixth by purchase from John McGuire, her interest in the whole is the undivided two-thirds.

III. The appellee claims to be allowed for debts paid by her while executrix of her deceased husband's estate, and 5. WILL: debts especially a mortgage debt which was a lien upon of the estate. the land in controversy. She claims this because, under the will, she became entitled absolutely to the whole of the personal estate, with the exception of two small specific bequests.

It is true that by the fourth clause of the will the wife is given all of the personal property of every description, with exceptions mentioned, but the will also directs that all of the just debts and expenses of burial shall be paid out of the estate. The personal property and money belonging to the estate was largely in excess of the debts. No particular fund is named or created, by express language, for the payment of the debts, and they are not charged upon any particular bequest, but upon the whole estate, and since the statute makes the personal estate primarily liable for the payment of the debts, which the will directs to be paid from the estate, the conclusion forces itself upon us that it was the intention of the testator that the debts should be paid from the personal

estate. See Revision, §§ 2372, 2373, 2374, 2375; *Black v. Black*, 40 Iowa, 88. The debts were thus paid by the executrix from the personal property, as was her duty to do under the terms of the will, and she is not entitled to be re-imbursed from the plaintiff's share of the real property.

The decree of the District Court will be reversed, and the cause remanded, with direction to render judgment in accordance with this opinion, and proceed thereon with the partition of the property in question.

REVERSED.