## *J. L. LENHART v. O. B. RAMEY.

1. INDORSER AND ASSIGNOR DISTINGUISHED.

> B. executed and delivered to L. his promissory note in ordinary form, payable to L. or bearer. L., over his name, indorsed the note to M. as follows: "I assign all my interest, right and title of the within note to M." Held: That L. was an indorser and not a mere assignor of said note, and as such indorser liable upon proof of demand and notice.

2. QUESTION OF DILIGENCE IN SERVING NOTICE OF DISHONOR, ONE FOR JURY.

> Where the facts are disputed, the question of diligence of a notary in serving notice of non-payment of note upon the indorser, is one for the jury to determine under the instruction of the court.

3. DELAY IN PRESENTATION.

> Where a note fell due on Saturday, in a city having no postal delivery, and the notary, being unable to get admittance to indorser's house, he being away from home, mailed the notice, and it was received Tuesday, this is due diligence.

ERROR to the Court of Common Pleas of Putnam county.

The facts are sufficiently stated in the opinion.

MOORE, J.

· Suit was originally brought to recover upon a promissory note, of which the defendant below, Jesse Brayton, was maker, and the other defendants below, J. S. Lenhart and George Mootz, were indorsers. Verdict was had, and judgment in favor of plaintiff O. B. Ramey.

The plaintiff below, O. B. Ramey, was a *bona fide* purchaser of the note, for value, before maturity.

· Lenhart alone made defense:

First.—That he was not liable in law upon the indorsement that he made upon the note.

Second.—He denied all the allegations of the petition relating to demand upon the maker, Brayton, and notice to him of non-payment. The execution of the note by Brayton; the indorsement of Lenhart; the *bona fide* purchase for value before maturity by Ramey, were all admitted.

· The instrument sued upon is in the ordinary form of a judgment note, made payable to J. L. Lenhart, or bearer, and signed by Jesse Brayton as maker. The indorsement made by Lenhart is "I assign all my interest, right and title of the within note to George Mootz.        J. L. LENHART."

The indorsement by Mootz to Ramey is in blank.

---

\* This judgment was affirmed by the supreme court, without report, November 28, 1890.

. The claim made by Lenhart is that the words used made simply a transfer of the note, and are not an indorsement creating the liability claimed by Ramey, the defendant in error.

The note being made payable to Lenhart, or bearer, is transferable by delivery, and the words "I assign all my interest, right and title of the within note to George Mootz," have no legal import, for without them the mere delivery of the note has the same effect in transferring all the interest, right and title of the payee, or holder; the words added nothing, and unless they restricted the liability of Lenhart, were entirely useless. Did the words used restrict Lenhart's liability?

It is well settled that the indorsement of a note made payable to "bearer" has the same effect and creates the same liability as if made payable to "order." Daniel on Negotiable Instruments, 3rd ed., sec. 663a; Story on Promissory Notes, p. 132.

In Eccles v. Ballard, 2 McCord (S. C.), p. 388, it is held that an indorser upon a note payable to bearer, is liable as upon a new bill to the bearer.

The court says: "The first point to be decided in this case is, whether the indorsement of a note payable to bearer, creates a legal liability in the indorser to pay the note, and on this point I am satisfied, for the note was negotiable in its nature, and although it would pass by delivery without indorsement, yet if one chose to put his name on it, it shows that it passed from him and is a new bill to the bearer."

In Brush v. The Administrator of Reeves, 3 Johnson, 439, the plaintiff declared on a promissory note given by one Spring to Reeves, the intestate, and payable to him or bearer. The note was indorsed over by Reeves, and the present suit was brought by the indorsee against his administrators. There was a general demurrer to the declaration. Held: "The note was negotiable under the statute, and transferable without indorsement, but if the payee chose to put his name on the back, he became as much bound as an indorser as if the note had been made payable to him or order.

It was ruled by Holt, C. J., in the case of The Bank of England v. Newman, 1 Lord Raym, 442, that if a person indorses a bill payable to bearer, he becomes a new security, and is liable on the indorsement.

In Smith et al. v. Rawson, 61 Ga., it was said: "The note was payable to Barton, or bearer, and Barton's indorsement could not affect the bearer's right to recover. It bound him to pay if the maker did not, and that was its only legal effect.

The authorities are to the effect that an indorsement made upon a note payable to bearer, has the same legal effect as if made to order. In this action—do the words used restrict the indorsement so as to make but a transfer of the instrument, as claimed by plaintiff in error, or is Lenhart liable as an indorser? The court below held the latter, and a majority of this court adheres to that opinion.

Daniel on Negotiable Instruments, sec. 688b and 688c, says:

"The payee of a promissory note assigned 'all his right and title' thereto in writing on the back of the instrument to a third party. Held 'That the assignment was equivalent to the indorsement of the note, and bound the assignor as indorser.'" Sears v. Lants et al., 47 Ia., 658.

It must be regarded as settled in this state, that the assignment of a promissory note by the payee thereof, in writing on the note, vests the legal title thereof in the assignee, so as to enable him to bring an action in his own name against the maker. Such being true, an assignment amounts to an indorsement, and makes the assignor liable as an indorser within the rule laid down by Parsons, above cited.

It has been held, and such is the rule, that to relieve one who indorses paper from liability as indorser, he must insert in the contract itself words clearly expressing such an intention. Daniel on Negotiable Instruments, 700.

. The case of Aniba v. Yeomans, 39 Mich., cited in Daniel on Negotiable In-

struments, and given in full in the note to the text, bases its decision upon the stated ground that by using the terms, "right, title, and interest," the indorsement includes much less than if in the ordinary form, or in blank. It appears to have escaped the attention of the court, or at least it is not mentioned, that the words used are implied in law, and add nothing more than if admitted and the indorsement was in blank, or as in the case where the note is made payable to bearer, the indorsement would be entirely for no purpose and to no effect if the indorser is not to be held liable.

A mere delivery of the note would be as effective to pass the right, title and interest of Lenhart as if the words named were indorsed upon the note and signed by him. The words written over Lenhart's signature imply nothing more than if left blank. They are not restrictive of the indorser's liability, and cannot limit the liability which the law imposes.

The indorser contracts that if the maker of the instrument does not pay, he will. This of course is subject to the conditions imposed by the law of demand and notice, and the rule is, that if he is not to be liable he must use such language, or make such contract, as will clearly protect him from such liability; such as would import, "without recourse," these words being most frequently employed.

If Lenhart's name, as payee in the note in controversy, imported nothing more than if made payable to bearer alone and he was but an accommodation indorser, the words used by him were entirely useless; they could have had no effect at all, and the purpose to use them was an idle one. On the other hand, if Lenhart, the payee and holder, delivered the note to Mootz, the indorsement made would be equally useless, and the maxim used in the text of Daniel before cited, sec. 688, "The expression of what is tacitly implied is inoperative," would apply. A majority of this court is of opinion that Lenhart is liable upon the note sued upon as an indorser.

The only question remaining for disposition is, whether due diligence was exercised in notifying the indorser, Lenhart, of non-payment of the note.

The note became due November 6, 1886, and was protested on that day. Lenhart resided in Leipsic, in this county, the place at which the note was made payable, and where the notary resided. Mr. Lenhart was on that day, and until some time after the close of business hours, away from home. The notary says, that he made an effort to find him, but failed; that he went to his house, and there failed to find anyone, or to gain admittance at the front door, although he "tried it"; he then deposited the notice of non-payment in the postoffice at Leipsic, duly stamped and addressed; that Lenhart had a box in the postoffice in connection with a firm of which he was a member, and that the mail was taken out frequently; that Lenhart had no place of business in Leipsic. It also appears that Lenhart did not get his mail on Saturday, November 6, 1886, and was not at the postoffice the next day, and was away from home on Monday; but that on Tuesday morning, the 9th, he received his mail at the postoffice, and with it the notice of the dishonor of the note.

If these facts are sufficient to sustain the verdict and judgment, there is no error in either the charge of the court, or the refusal to charge as requested by Lenhart, defendant below.

Section 3176, Rev. Stat., as amended, 79 O. L., 30, does not affect this case. See also, 3 Williams St., 155. This amended section provides a mode for giving notice in cities having a postal delivery, to take the place of personal service—a cumulative method in such cases.

Lenhart had no place of business at which notice could have been served; his domicile was, however, in the village of Leipsic; he was away from home when the note fell due. The jury had a right to find from the evidence that there was no one at the house to receive the notice: at least, that the notary exercised due diligence to determine that fact. In Story on Promissory Notes, 315, sec. 240, the author says: "What will be due and reasonable diligence on

the part of the holder, in making inquiries to ascertain the actual residence or place of business of the maker, either originally, or upon a change of domicile, is a matter susceptible of no definite rule, and must essentially depend upon the circumstances of each particular case, and will be governed by the same general considerations as those which regulate the place and mode of notice to parties."

In Lawson & Covode v. The Farmer's Bank of Salem, 1 O. S., 206, the court uses this language: "The law does not require the utmost diligence in the holder, in giving notice of the dishonor of a bill or note; all that is requisite, is ordinary or reasonable diligence, and this is not only the rule and requirement of the law merchant, but a statutory provision of this state. But what amounts to due diligence or reasonable notice is, where the facts are ascertained, purely a question of law, settled with a view to practical convenience and the usual course of business."

In the case under consideration there is a dispute of facts. The notary was not required to use extraordinary diligence, or make unusual efforts to find the indorser, or to furnish him with the notice. If, in order to bind the indorser, it is absolutely required that he be either served with notice, or it be left at his domicile, he could evade both and escape liability by absenting himself for a short time and locking his doors. The notary in this case made inquiry at the place of business of a firm of which Lenhart was a partner, and which place he frequented; went to his house; endeavored at the usual place to gain admittance by knocking upon and trying the door, and failed to obtain it. Afterward, and on the same day, he deposited the notice addressed to Lenhart in the post-office, prepaid. We think the jury had, upon this evidence, the right to find that due diligence was used, under the instruction of the court.

If we are correct in this, there was no error in the charge of the court. Judgment of the court of common pleas is therefore affirmed.

BEER, J., concurring.

SENEY, J., dissents.

What relation does Lenhart sustain to the note by his indorsement, is a question novel and important, and not free from doubt. I am unable to arrive at the same conclusion as the majority of the court. I express my dissent for the following reasons:

The substance of the text taken from the 3d edition of Daniel on Negotiable Instruments, sec. 688c, is that where a promissory note is payable to order, and is indorsed by the payee, similar to the indorsement upon the note in controversy, the payee is liable as an indorser.

The authorities cited in support of the text, upon a careful examination, will be found not to support this theory, notably so the case of Sands v. Woods, 21 Ia., 263. In that case the only question presented to the court was, whether or not, as between indorser and indorsee, a blank indorsement could be explained by parol testimony; that is, whether the implication as to the liability, created by law by a blank indorsement, could be explained by parol, so as to correspond with the agreement of the parties. It was held by the court it could not.

The same court, in the case of Sears v. Lantz, 47 Ia., 658, which is more at point with the case at bar, held that on an indorsement of a note by the payee, similar to the indorsement of the note in this controversy, the payee was liable as an indorser; but the opinion is based solely and alone, and has for foundation the case of Sands v. Woods, 21 Ia., 263.

Should this opinion be followed in Ohio? As I have said, the foundation of the case of Sears v. Lantz, 47 Ia., 658, is the case of Sands v. Woods, 21 Ia., 263, and the doctrine laid down in that case was not the law of Ohio, and was so decided by our supreme court, in the case of Dye v. Scott, 35 O. S., 194, where the court say: "And testimony is admissible to prove that the indorser,

as between himself and the indorsee, at the time of indorsing a note in blank, waived demand and notice."

And again, the supreme court of Ohio says, in Hudson v. Wolcott, 39 O. S., 618: "In an action by an indorsee against his indorser, the question whether a blank indorsement was made in the usual course of trade for the purpose of transferring title, and as evidence of a contract of indorsement, is issuable, and under such issue the indorser may prove that his name was written on the back of the instrument at a different time and for a different purpose. Also he may prove, as part of the *res gestæ*, the declarations and conversations of the parties at the time of the transfer."

The reason and foundation of the rule in Iowa being contrary to the opinion of our own court—does not the rule go down with the foundation?

An English authority is cited by Judge Daniel in support of the text, which bears the ear-marks of age, and was rendered at a time when the commercial law of this country was in its infancy, and when our own courts had not established rules to govern this branch of the law, as they have at present.

Of the several authorities cited by Judge Daniel, the one that to my mind presents the clearest and soundest reason and unanswerable argument, is the case of Aniba v. Yeoman, 39 Mich., 171, and which is cited in full by the author in a note to his text. This decision is directly the reverse of the views expressed by Judge Daniel in his text, viz.: That such an indorsement constitutes the party an assignor of title, and not an indorser.

· And why is it not sound law? The indorsement of a note in blank payable to order, by a payee, transfers all the right and title the payee has to the paper, and in addition thereto, makes the payee liable, conditioned upon demand and notice. It is nothing more than a contract; he transfers by agreement all his interest in the note, and agrees to pay it, if demand is made and notice given. His name appearing indorsed upon the same kind of a note, and written above his name, "I hereby assign all my right, title and interest in the within note"—why then do not these words constitute a complete, express written contract? Can an implication, made by law, defeat an express contract? Upon what principle of law can such a doctrine be sustained? An express contract excludes any other that the law implies or the parties intended.

It has been said by an eminent judge: "To relieve one who has indorsed paper, from liability as indorser, he must insert in the contract itself words clearly expressing such an intention." Can it be more clearly expressed than by his written contract, whereby he limits his indorsement to a transfer of the bill?

Again, under the principle laid down by the supreme court of Ohio which I have referred to, it is competent to show, by parol or otherwise, as between indorser and indorsee and parties with notice, what by a blank indorsement is *prima facie* so—is not so.

Suppose, for instance, in the case at bar, that Lenhart had said upon the delivery of the note—and indorsing it in blank—I hereby transfer all my right, title and interest in the within note; would that not have been in explanation of the blank indorsement, and his only contract? Would not this have been in legal effect the same as if he said, by my blank indorsement the law raises an implied obligation to pay; by my words I limit my liability to a transfer of the title. The note is mine, and no one else has an interest in it; my interest I transfer or assign to you. If this is true, does not the law in Ohio make him an assignor, and not an indorser?

Would these words lose any of their force by being written on the back of the note instead of spoken?

What would the clear and evident intention of the use of these words mean? Could the party say, true this is the only contract you made; this is all that was said between us. I accepted the note with this understanding, yet the law makes a different contract.

What safety would there be in making a contract if such a rule should prevail?

These words that are clear, simple and unambiguous, cannot bear any other construction than an assignment of the title. The intention of the parties was there. Yet notwithstanding the minds of the parties met upon this clear intention, the law will enforce another contract not intended. If so between indorser and indorsee, it cannot be different with a party whose knowledge is derived from the contract itself.

Thus far I have presented my views upon a note payable to order and indorsed by the payee, but that is not this case.

The note in question is payable to Lenhart or bearer. This in legal effect is the same as if the note read payable "to bearer," so that the indorsement of Lenhart is not that of payee, but of a stranger to the paper; and being a stranger, the rule laid down by Judge Daniel does not apply.

The implication arising that an indorsement, in blank, of a note payable to order, implies the transfer of the right, title and interest, and when that is written out it has no more effect, does not arise in the case at bar.

It is an indorsement by a stranger; and being a stranger it is governed by rules, free from any liability that might attach were he the payee.

It is his own separate, distinct contract, not in the usual course of trade, and is governed by the rules of contract and not of negotiable paper, and as I have already stated should be enforced according to the plain and simple meaning of the words used. The reasons I have already given, to my mind, appear with greater force to this indorsement than to one where the payee indorses.

For these reasons, in my opinion, Lenhart is not liable on the note, and the judgment of the court below should be reversed.

J. F. Burkett and A. V. Watts, for plaintiff in error.
Wm. H. Leete, for defendant in error.