Jacobs v. Jacobs.

---

JACOBS ET AL. V. JACOBS ET AL.

1. **Contract**: CONSTRUCTION. In the construction of a contract the actual meaning of the parties is to be sought; and in arriving at this the subject matter of the contract and the situation and purpose of the parties must be considered.

2. ——: ANTE-NUPTIAL: DOWER. A contract entered into by the husband and wife before marriage stipulated that "each is to have the untrammeled and sole control of his or her own property, real and personal, as though no such marriage had taken place:" *Held*, that the husband's grantees would take realty from him unincumbered by the wife's claim for dower, and that after his death she could not assert her right of dower in his estate.

3. ——: ——: HEIRS. An agreement that "in case of the death of either without issue, his or her property and effects shall descend and belong to the heirs of the deceased only," was *held* to refer to children only and not to imply that the widow should take as an heir. The word *heir* may be thus limited when the intention is apparent.

Jacobs v. Jacobs.

4. ——: ——: CONSIDERATION.. A contract entered into before and in consideration of marriage, which is fair and reasonable in itself an, free from fraud and imposition, will be enforced.

*Appeal from Keokuk District Court.*

TUESDAY, APRIL 4.

THE plaintiffs, who are the children of Austin Jacobs, deceased, bring this action for the partition of certain real estate of which the said Austin Jacobs died seized, alleging that said decedent and Anna Jacobs, his widow, prior to their marriage entered into an agreement whereby the said Anna relinquished her right of dower.

The defendant, Anna Jacobs, denies that she made any relinquishment of her interest in the real estate of her husband, and claims that she is entitled to have set off to her such portion of the real estate in question as will be equal to one-third in value thereof.

The contract referred to in the petition was executed on the 15th day of March, 1865, and is as follows: " That the said parties have mutually agreed this day to become husband and wife according to law, and it is hereby forever agreed by the parties that each of them is to have the untrammeled and sole control of his or her own property, real and personal, as though no such marriage had taken place; and it is further mutually agreed by said parties that neither is to be holden or made liable for the debts or contracts of the other, but that each of them may sue and be sued, and conduct his or her own business as though such marriage had never taken place. It is also agreed by the parties that, in case of the death of either without issue, his or her property and effects shall *descend and belong* to the heirs of the deceased only; but if there should be issue, then such child or children are to be entitled to one-half the amount of the estate of each party or parent that the former children of each are by law entitled to. And it is further agreed by the party of the second part that he is to maintain the said Anna and her children in a decent and becoming manner, as he does his own, just as long as any of

them may see fit to remain with him and labor as one of the family, and also to be as subject to his control as one of his own family. It is also agreed by the parties that nothing whatever is to deprive him of a reasonable control over said children; and the said Jacobs hereby agrees that should he depart this life previous to the said Anna's departure, that he will secure her by will in such an amount as he may deem just and right. But if the said Anna should see fit or prefer to leave his bed and board without just cause or provocation, then this will clause is to be null and void."

The cause was tried by the court, who found the facts to be as follows: "About the day of the date thereof Austin Jacobs and Anna Bucher entered into the written contract as alleged in the petition. At the time the said Jacobs was a widower, aged sixty-two years, was so crippled as to be unable to walk, had eleven children living, most of whom were of age, and owned the real estate described in the petition, which was of the value of between $12,000 and $14,000; and the said Anna was a widow, had three children, and owned forty acres of land, and had between $700 and $800 in money. On the 23d day of March, 1865, the same day of their marriage, but a few minutes before the marriage ceremony took place, they acknowledged the contract, as shown by the certificate of acknowledgement thereto. They lived together from the time of their marriage till in January, 1873, a little less than eight years, and had born to them two children, Joan and Oscar; the most of the time they lived together, two or three of his other children and two of hers lived with them; they often quarreled and lived very unhappily and disagreeably together. Their children by former marriages were one very fruitful source of their difficulties. She was more violent and abusive in her manner than he. For two or three years before the separation she often talked of leaving him, and he sometimes expressed a willingness that she should leave, and finally a few days before she moved from the house he caused a notice to be inserted in a newspaper stating that she had left his bed, that it had become apparent they could no longer live in peace together, and warning all persons not to trust her on his account,

and when she left she was assisted in moving by his directions. She took with her their two children.    Both were willing at the time that the separation should take place.    A few days prior to her leaving and on the day she left, it was talked between them and understood that there should be thereafter a settlement between them, in relation to property and the support of herself and children, and that the consideration going to her for that purpose should be $1,000 payable in installments of $200 each year until paid.    After she had been gone sometime he went to her and tried to prevail on her to return, but she refused and continued to live separate from him, and was so living at the time of his death, which occurred on the 22d day of October, 1873."

And on these facts and the admissions in the pleadings the court bases the following conclusions of law, to-wit:  "That the said contract, entered into before marriage, is binding on the said Anna, and that it should be construed according to the true intent of the parties at the time it was made, and this intent should be determined not only from the language used, but also from the circumstances surrounding the parties at the time.    And from these rules the court concludes that it was the intention of said parties to provide by said contract, that if the said Austin should die leaving the said Anna surviving him, she should not be entitled to dower in his lands. That the separation of the parties and the remaining away of the said Anna, being not without fault on her part, the fact of his making no provision for her by will does not avoid the contract in relation to dower.    The understanding about the time of the separation, in relation to a future settlement and the payment of money, has no material bearing upon any legal question involved in this case."

The court decreed that Anna Jacobs is not entitled to dower, and that the land described in the petition be partitioned as prayed in the petition.    The defendant, Anna Jacobs, appeals.

*McJunkin, Henderson & Jones* and *Johnson & Brown*, for appellant.

An heir is he upon whom the law casts the estate immedi-

ately upon the death of the ancestor. (2 Blackstone, 201.) Titles by courtesy and in dower arising by operation of law upon the death of the wife or husband properly fall under the head of title by descent. (4 Kent, 374.) An ante-nuptial contract will not bar dower, unless it is especially so provided by the terms of the contract or by necessary implication. (*Swaine v. Perine*, 5 Johns Ch., 482; 2 Scribner on Dower, §§ 57–8; Id., pp. 377–8.) A court of equity will not decree specific performance of a contract unless it is just and reasonable in all its parts and founded on an adequate consideration. (*Gould v. Womach*, 2 Ala., 83.) A legal or equitable jointure must be expressed in the instrument to be in satisfaction of the whole or a part of the wife's dower. (1 Washb. on Real Prop., p. 265.)

*Woodin & McJunkin* and *Mackey & Donnell*, for appellees.

In determining the intent of the parties to a contract it is proper to consider not only the language of the parties, but also the purpose in view, the subject matter and the attendant circumstances. (*Foley v. McKeegan*, 4 Iowa, 1; *McCrary v. Griffin*, 13 Id., 313; *Field v. Shricker*, 14 Id., 119.) Parties need not say in an ante-nuptial contract that the right of dower is relinquished; it is sufficient if such intent can be inferred from the entire instrument. (*Hoyle v. Smith*, 1 Head. (Tenn.), 90; *May v. May*, 7 Fla., 207; *Tevis v. McCreary*, 3 Met. (Ky.), 151; *Mason v. Deere*, 33 Ga., 308.) Marriage is a valuable and meritorious consideration. (*Bradish v. Gibbs*, 3 Johns. Ch., 549; *Andrews v. Andrews*, 8 Conn., 84.) A consent to a separation is a revocable act, and when one of the parties in good faith seeks a reconciliation and the other refuses, this constitutes desertion by the party refusing. (Bishop on Marriage and Divorce, § 513.) Almost any *bona fide* and reasonable agreement made before marriage to secure the wife in the enjoyment of her property, will be carried into execution by a court of equity. Ante-nuptial contracts are within the policy of the law. (*Stilley v. Folger*, 14 Ohio, 649.)

DAY, J.—The court adopted the proper rules of construction, and correctly construed the contract in question. The 1. CONTRACT: whole contract must be considered in determining construction. the meaning of any of its parts. The first point is to ascertain what the parties meant, and then to put such construction upon their contract as will bring it as near to their actual meaning as the words they saw fit to employ, when properly construed, and the rules of law will permit. In arriving at this meaning the subject matter of the contract, the situation of the parties and of the property, and the purpose of the parties in making the contract must be considered. *Field v. Schricker*, 14 Iowa, 119; *Foly v. McKeegan*, 4 Iowa, 1.

Looking alone to the contract of the parties we discover they agreed " that each of them is to have the untrammeled 2. ———: ante- and sole control of his or her own property, real nuptial: dow-er. and personal, as though no such marriage had taken place." This agreement is entirely inconsistent with the notion that the wife still retained her dower right in the lands of her husband.. Under the law in force when this agreement was executed, the wife was entitled to one-third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, which had not been sold on execution, and to which the wife had made no relinquishment of her right. 'The husband could not make any disposition of his real estate, which would not be charged or burdened with this interest of the wife. But under the agreement in question the expectant wife surrenders all claim to her husband's property. She agrees that he may have the untrammeled and sole control of all his real property, as though no marriage had taken place. Under this agreement it cannot be questioned that the husband might, during coverture, without the concurrence or assent of his wife, have disposed of every acre of his land, and that the grantees would have taken it unincumbered with any claim of the wife for dower. The husband might also have disposed of this real estate by will, without the assent of the wife. She could not, by objecting to the will, and relinquishing the rights thereby

conferred, be remitted to her dower interest as provided in section 2435 of the Revision. It is impossible to conceive of a dower right, which is under the absolute control of the husband.

Appellant, however, relies upon the provision of the contract, "that in case of the death of either without issue, his or her property and effects shall descend and belong to the heirs of the deceased only." It is conceded that the husband might have disposed of the entire estate either by deed or by will. But it is claimed that, under the contract, upon his death seized of the realty, it descended to his heirs, and that his wife is such heir, and entitled to her share. If it be conceded that the wife is such heir, and so entitled to a share of the estate, then the effect of the agreement is to cause the property to descend just as it would have done if no agreement had been made.

However ignorant the parties may have been of some of the rules of descent, it cannot be presumed that they did not know what right a widow had in the realty of her deceased husband; and it is not credible that they deliberately went to work to provide by contract that the widow should have just such right as the law would give her without contract. We have already seen that the whole contract must be considered together, in placing a construction upon any of its parts.

The parties in contemplation of marriage were providing that each should have the untrammeled and sole control of his or her property.

The rules of descent are not so generally known or understood as the law which determines the wife's dower interest, and hence the parties undertake to provide for the disposition of their property upon their deaths. At the time of this agreement one contracting party had eleven children and the other had three. When they speak of the death of either without issue, they evidently refer to such death without joint issue of their marriage. This we think is plain from what follows, "but if there should be issue, and a child or children born to them, then such child or children are to be entitled to one-

half the amount of the estate of each party or parent, that the former children of each are by law entitled to."

The agreement then would be that in case of the death of either party without issue of the marriage his or her property shall descend to the children of the deceased only, but if there should be children born to them, then such children should be entitled to one-half as much from each parent, as by law would go to the former children of such parent.

The word heirs would thus be limited to children, as it is competent to do when such intention is apparent. *McMenomy v. McMenomy*, 32 Iowa, 148. If it be objected that under this construction the parties, in the event of there being no issue of the marriage, provided the same course of descent as the law marked out without any agreement, the answer is that it is much more in harmony with the entire agreement to suppose that they did this, than that they intended, after each had surrendered all rights in the property of the other, to provide that, upon the death of either, the survivor should have the same rights of property as though no contract had been made.

II. It is claimed, however, that the contract is unreasonable and without sufficient consideration, and, therefore, ought not in a court of equity to be enforced. We cannot so regard it. The law always looks upon marriage as a civil contract, and this marriage seems to have been purely a business transaction. So far as appears, the contract was freely and voluntarily entered into, without any fraud or imposition. One of the parties was a crippled widower, sixty-two years old, with eleven children, and real estate worth $12,000; the other, a widow with three children, forty acres of land and $700 or $800 in money. They were willing to marry, but each wanted the sole control of his or her own property and to transmit it to his or her children. He secured a nurse and a housekeeper, and she secured an agreement for the maintenance of herself and her three children. We cannot say but that the advantages are about equal, and the contract is fair and reasonable. We know of no reason why it should not be enforced.

III.   If there was a valid agreement upon the separation that defendant was to have $1.000, the failure to perform this agreement would not entitle defendant to one-third of the lands in question.   If such agreement was made and has not been performed, her remedy is to look to the estate for payment of the stipulated sum.

AFFIRMED.