MARIA J. WENTWORTH *vs.* ARTHUR F. WENTWORTH

· and

ARTHUR F. WENTWORTH, appellant, *vs.* MARIA J. WENTWORTH.

York.    Opinion March 4, 1879.

*Dower,—bar of.  Allowance.  Consideration.*

Under the provisions of R. S., c. 61, § 6, a woman, contemplating marriage, may, by a proper writing, executed before marriage in the presence of two witnesses, bar her right of dower in the lands of her intended husband.

Thus, when parties about to enter upon the marriage relation, but before marriage, mutually agreed in writing under seal, that neither they nor their heirs, executors or administrators, would, "in any event, take, claim, control, hold or intermeddle with, any of the real estate, personal property, or any property whatever, which either has or may thereafter derive by inheritance, devise, donation, purchase or otherwise, nor with the rent, profit or interest thereof, intending thereby to bar each other of all right, title and interest which they might otherwise have in each other's estate by reason of marriage: " *Held*, that the right of dower was barred.

Also *held*, that such an agreement was no bar to an allowance by the judge of probate.

Marriage is sufficient consideration for the agreement. So is the reciprocal character of the stipulations.

On REPORT.

The first case is an action of dower ; the second an appeal from an allowance made by the judge of probate to the appellee, as the widow of Asa Wentworth.

The two cases were tried together. During the progress of the trials, Arthur F. Wentworth offered in evidence paper " A," and contended that it would bar the claims ᐧfor dower and allowance. The presiding justice ruled, *pro forma*, that said instrument would not bar Mrs. Wentworth of her claim for dower or allowance. Whereupon, by agreement, the cases were withdrawn from the jury, for the law court to determine, before settling any other questions in the cases, whether the paper, if executed freely and understandingly, would bar the claim of Mrs. Wentworth for dower and allowance, or either. Upon reception of the opinion the cases to stand for trial upon such questions as either party may raise.

[ Paper "A."]    " Know all men by these presents, That I, Asa Wentworth of Saco, in the county of York and state of Maine, and Maria J. Brown of Portland, in the county of Cumberland and state of Maine, single woman, whereas a marriage is soon intended to be had and solemnized between the said Asa Wentworth and the said Maria J. Brown, that if a marriage shall be had and solemnized, it is agreed between the said Asa Wentworth and the said Maria J. Brown, that the said Wentworth, his heirs, executors, administrators and assigns, shall not, and will not in any event, take, claim, control or intermeddle with any of the property which now is of the said Maria J. Brown, or which may hereafter be derived in her right by inheritance, devise, donation, purchase or otherwise, nor with the profit, interest or income thereof.    And that the said Maria J. Brown, her heirs, executors, administrators or assigns, shall not, and will not in any event, take, control, claim, hold or intermeddle with any of the real estate, personal property, or any property whatever, which now is of the said Asa Wentworth, or which may hereafter be derived in his right by inheritance, devise, donation, purchase or otherwise, nor with the profit, rent or interest thereof, or income, and we hereby intend to bar each other of all rights, title and interest which we might otherwise have in each other's estate by reason of the aforesaid marriage.

" In witness whereof, I, the said Asa Wentworth, and Maria J. Brown, have hereunto set our hands and seals this fourth day of February, A. D. 1867. (Signed) Asa Wentworth. (seal). Maria J. Brown. (seal).

" Signed, sealed and delivered, and executed in presence of, and the word " control " and " purchase " interlined before signing and sealing, Jane Chase, F. W. Guptill."

*W. J. Copeland, H. H. Burbank & J. S. Derby*, for the defendant.

I. It has long been settled that antenuptial contracts are an equitable bar to dower, and will be enforced in chancery agreeably to their intent. 2 Kent Com. 172. 2 Scrib. on Dow. 390. *Stilley* v. *Folger*, 14 Ohio, 610. *Murphy* v. *Murphy*, 12 Ohio St. 407. *Andrews* v. *Andrews*, 8 Conn. 79. *Selleck* v. *Selleck*, 8 Conn. 85. *Cauley* v. *Lawson*, 5 Jones Eq. 132. *Geltzer* v. *Geltzer*, 1 Bailey's Eq. 387. *Logan* v. *Phillips*, 18 Mo. 22. *Johnson* v. *Johnson*, 30 Mo. 72. *Miller* v. *Goodwin*, 8 Gray, 544.

II. R. S., c. 61, § 6, extends the common law so far as to make such contracts a bar at law.

The statutes of Massachusetts, (Gen'l Stats., c. 108, § 27) similar to, though not so comprehensive in its terms as our own, has been held to bar dower. *Sullings* v. *Richmond*, 5 Allen, 187. See notes on Gen. Stat. 268.

III. Marriage and the mutuality of the release disclose a sufficient consideration without requiring us to resort to extrinsic evidence. 2 Kent Com. 173. Schouler's Dom. Rel. 263. *Andrews* v. *Andrews*, 8 Conn. 84. *Vance* v. *Vance*, 21 Maine, 370. *Reade* v. *Livingston*, 3 Johns. Ch. 481. *Jacobs* v. *Jacobs*, 42 Iowa, 600. *Maguiac* v. *Thompson*, 7 Peters, 348. *Neves* v. *Scott*, 9 Howard, 196.

IV. R. S., c. 61, § 6, like the Stat. of Mass., is additional to, and independent of, the settlement by jointure and the pecuniary provision assented to in lieu of dower, and empowers the parties to contract that the property of " either shall be held by them according to its stipulations." *Jenkins* v. *Holt*, 109 Mass. 262.

If a pecuniary consideration in addition to the consummation of the marriage is required, the contract falls within R. S., c. 103, § 8, and the present statute is a nullity.

V. Equity will enforce such a contract as this in bar of allowance. *Tarbell* v. *Tarbell,* 10 Allen, 278. *Buttman* v. *Porter,* 100 Mass. 337. *Jenkins* v. *Holt,* 109 Mass. 261.

VI. A fair construction of our statutes, making it at law "a bar to all rights," will include allowance as well as dower.

*R. P. Tapley,* for the plaintiff.

I. The instrument does not operate as a relinquishment of dower. *Vance* v. *Vance,* 21 Maine, 364.

II. The covenants cannot operate as estoppel. *Gibson* v. *Gibson,* 15 Mass. 106. *Hastings* v. *Dickinson,* 7 Mass. 153. 5 Allen, 187.

Not lawfully barred. R. S., c. 103, §§ 1, 6–10.

The provision under which this instrument releases dower is found in chapter on Married Women, first enacted, 1857.

It is not a "marriage settlement," which has a legal, technical signification. It is not executory. Some title passes. 2 Bouv. L. Dict. 2 Whart. Lex. title Marriage Settlement. Burritt's L. Dict., same title.

The agreement in terms does not extend beyond married life. Heirs of both excluded.

The last claim adds nothing in effect.

There is no consideration. 3 Redf. Wills, (2 ed.) 381. 4. Kent Com. 56. *McCosta* v. *Tiller,* 2 Paige, 511. *Power* v. *Sheel,* 1 Moll. 296.

The allowance is discretionary, and is no right, title or interest, which alone are within the terms of the agreement.

*E. Eastman,* on same side, cited *French* v. *Peters,* 33 Maine, 396. *Lakin* v. *Lakin,* 2 Allen, 45. Stat. 27 Hen. VIII, c. 10. 2 Steph. Com. 307. 2 Kent Com. 172–178. Atherly Mar. Set. 92. *Bubier* v. *Roberts,* 19 Maine, 460. *O'Brion* v. *Ellis,* 15 Maine, 125. *Stevens* v. *Owen,* 25 Maine, 94. Stearns Real Act. 239. *Lufkin* v. *Curtis,* 13 Mass. 223. *Leavitt* v. *Lamprey,* 13 Pick. 382. *Hall* v. *Savage,* 4 Mass. 293.

No bar by estoppel. *Vance* v. *Vance*, 21 Maine, 364, 371. *McGrachen* v. *Wright*, 14 Johns. 193. *Gibson* v. *Gibson*, 15 Mass. 106. Klines' Est., 64 Pa. St. 124. *Garrison* v. *Grogan*, 48 Mo. 302. *Curry* v. *Curry*, 17 N. Y. S. C. 366. 4 Kent Com. 56. *Gould* v. *Vomack*, 2 Ala. 83. *Stilley* v. *Folger*, 14 Ohio, 610. 1 R. S. of N. Y. 741, §§ 8, 9, 11.

On allowance. 32 Maine, 576. Reaffirmed in *Kersey* v. *Bailey*, 52 Maine, 198.

VIRGIN, J. The first question to be determined is : Does the instrument of February 4, 1867, if executed freely and understandingly, bar the plaintiff's claim of dower in the lands of her late husband ?

The decision of this question depends upon the construction to be given to R. S., c. 61, § 6, and upon that of the instrument itself.

This provision of the statute first appeared in the revision of 1857, in accordance with the recommendation of the distinguished revision commissioner, Shepley, late C. J. Com. Rep. 7. The material part of the section provides that, parties about entering upon the relation of husband and wife, " may, by a marriage settlement, executed in the presence of two witnesses before marriage, determine what rights each shall have in the other's estate during marriage, and after its dissolution by death ; and may bar each other of all rights in their respective estates not so secured to them."

Whatever may have been the great leading object of marriage settlements, when, under the common law, a married woman's entity was so merged, and her property so essentially lost by marriage, now, since the statute has placed her more nearly on an equal footing with her husband, one of the principal objects of such antenuptial proceedings has become obsolete, and the provisions formerly so common have disappeared. For now, in this state, a married woman is no longer under the necessity of having property settled upon her, since she may " acquire," " own," " manage," " convey " and " devise " any kind of property, and make any lawful contract, and is not deprived of any part of it by mar-

riage, nor does the husband thereby acquire any right to any of his wife's property. R. S., c. 61, §§ 1, 2, 4. Still there are some rights which each has in the property of the other when deceased, (R. S., c. 103, § 15) which need not be enumerated here, together with the right of dower as provided in R. S., c. 103, § 1.

The rules governing the status of marriage are fixed and cannot be changed by parties to suit themselves. The terms of the conjugal relation are too essential to the public weal to be tampered with. But, before marriage, parties have always had the authority, within certain well defined limits, by special stipulations fairly and understandingly entered into *inter sese*, to vary the property interests which each, by virtue of the marriage, acquires in the other's estate. 1 Bish. Mar. W., §§ 418, 425, 427, and cases cited in notes. Schoul. Dom. R. 262. Almost any *bona fide* antenuptial contract made to secure the wife, either in the enjoyment of her own property or a portion of that of her husband, either during coverture or after his death, will be enforced in equity. Schoul. Dom. R. 263. 1 Bish. Mar. W. § 423, notes. *Jacobs* v. *Jacobs*, 42 Iowa, 600. *Andrews* v. *Andrews*, 8 Conn. 79, 85. *Naill* v. *Maurer*, 25 Md. 532, and cases. The principle underlying the cases is that the parties have substituted their own agreement for the rule which prevails in the absence of any agreement. 1 Bish. Mar. W. § 627. Same as one may substitute a devise for the rule of descent in the absence of a will.

R. S., c. 61, § 6, already quoted, has substantially adopted the rules which have been so long established in equity, and now parties contemplating marriage may determine their property rights and bar their respective interests at will. The right to " determine what rights each shall have in the other's estate," authorizes a determination that neither shall have any rights in the other's estate. This result was frequent in marriage settlements. It comes within the definition of Burrill : As an instrument in " writing, usually made before marriage, and in consideration of it, by which the estate of either or both of the parties is settled or limited to be enjoyed in a certain way." Burrill's Dict. Tit. Mar. Set. To the same effect are numerous cases in the

Southern courts, where settlements have frequently been the subject of litigation. Thus in *Bullard* v. *Taylor*, 4 Desau (S. C.) 550, it was held that a marriage settlement may provide that the property of each shall remain as if no marriage had taken place. See, also, *Naill* v. *Maurer, supra. Jacobs* v. *Jacobs, supra.*

The sweeping language in the last clause of the statute must include the right of dower. "All rights" are not less than the whole. This is not inconsistent with R. S., c. 103, section one of which provides that every married woman shall be entitled to dower in the lands mentioned "unless lawfully barred,"—not unless barred as hereinafter provided. There is no language limiting her power of barring her dower to the modes specified in c. 103. She may bar her dower in any lawful manner, since by the statutes she can make any lawful contract.

Upon examination of the instrument executed by the parties February 4, 1867, we find it was signed and sealed in the presence of two witnesses, and acknowledged and recorded, having the leading characteristics of a deed of conveyance except in language. It was made in consideration of marriage, although it is not so declared in terms. *Naill* v. *Maurer, supra.* Marriage is the highest consideration known to the law. *Ford* v. *Stewart,* 15 Beav. 499. *Maguiac* v. *Thompson,* 7 Pet. 348. *Vance* v. *Vance,* 21 Maine, 370. Even if it were otherwise, the reciprocal character of the stipulation might well constitute a sufficient consideration. *Naill* v. *Maurer, supra.* After specifically stipulating in almost every conceivable manner that neither will " in any event," take, control, claim, hold or intermeddle with any property of the other, or interest in the same, they then mutually declare their meaning and intention to be " to bar each other of all rights, title and interest which we might otherwise have in each other's estate by reason of the aforesaid marriage." What " right, title and interest " was it possible for her to have in his estate " by reason of the aforesaid marriage" except that of dower and the right provided in c. 103, § 15 ? And she bars all her rights which she might otherwise have. To be sure, she does not specify dower any more than she does any other right, but

aggregates them all in her bar. Parties need not in express terms stipulate that the " right of dower " is barred. It is sufficient if such intent can be legally inferred from the entire instrument. *Hoyle* v. *Smith*, 1 Head (Tenn.) 90. *Mason* v. *Deese*, 30 Ga. 308. Thus in *Jevis* v. *McCreary*, 3 Met. (Ky.) 151, the court say that whether the provision for the wife " shall be regarded as having been made in satisfaction of dower is a question of intention. It is not necessary that such provision should be expressly stated to be in lieu of dower; it will be sufficient if it can be clearly collected from the instrument that it was so intended. 1 Bright on Hus. & Wife, 450. *Worsley* v. *Worsley*, 16 B. Mon. 469. So in *Jacobs* v. *Jacobs, supra,* where parties contemplating marriage stipulated that " each is to have the untrammeled and sole control of his or her own property, real or personal, as though no such marriage had taken place," it was held that the wife could not claim dower after the husband's death.

Mr. Bishop says, in relation to upholding such contracts in law : " The contract which was executed before marriage is, though not enforceable at law during coverture, just as good in the courts of law after coverture is dissolved as if there had been no intermediate practical suspension of its legal effect. Therefore if a widow prays, in a court of law, to have dower assigned to her,—her claim being not a vested one in the land but a right merely in the nature of a chose in action—it ought in this court to be deemed a sufficient answer that she had, for a good consideration, agreed not to present any such claim." 1 Bish. Mar. W. § 425. This result is substantially brought about by our statutes.

The general statutes relating to married women in New York are very different from ours, and the case of *Curry* v. *Curry*, cited by the plaintiff, is not in accordance with the modern current of authority; and neither does the reasoning satisfy us. Whether the plaintiff or the defendant made the better trade we have no means of knowing, for none of the circumstances are reported.

II. We are of the opinion that the instrument of February 4, is no defense in the supreme court of probate to a petition for an allow-

ance, which is wholly within the court's discretion. Such have been the decisions in Massachusetts. *Blackington* v. *Blackington*, 110 Mass. 461, and cases therein cited.

*Cases to stand for trial.*

APPLETON C. J., WALTON, BARROWS and LIBBEY, JJ., concurred.