MARGARET H. LAWLEY et al., Plaintiffs, v. ALOYSIUS KEYES et al., Defendants.

DESCENT AND DISTRIBUTION: Determination of Heirs—Unmarried Intestate without Issue—Stepmother. A stepmother is a direct heir of her intestate, unmarried and issueless stepson. This follows from the fact that, in indulging the fiction of both parents' momentarily surviving the intestate, the presumption is not indulged that, during such moment of surviving, the parents were *husband and wife.* Recognition is given to the married or single relation of each as it *manifestly would have been,* had they actually survived. (Sec. 3381, Code, 1897.)

PRINCIPLE APPLIED: James and George were the sole issue of their parents. The mother died. Later, the father remarried. He died in 1897, leaving surviving the widow (the boys' stepmother), but no children by the last marriage. The widow did not remarry. In 1912, while their stepmother was alive, James and George, as the result of an accident, both died on the same day, intestate, unmarried and without issue. George died first. The brothers each owned one half of certain lands. If it be assumed that the mother momentarily survived both the sons and then died, she manifestly would not leave a husband surviving. On the other hand, if it be assumed that the father survived both the sons and then died, he manifestly would leave surviving a widow—the stepmother. *Held,* the stepmother would take 1/12 of George's estate; because, if the father did survive George and then die, she, as widow, would, since James was still alive, take ⅓ (Sec. 3366, Code, 1897) of ½ (Sec. 3379) of ½ (George's interest in the land), or 1/12. *Held,* also, the stepmother would take 11/48 of James' estate; because (a) when James died, he owned ½ (his share formerly owned), plus ¼ from George (James took the mother's fictitious ¼ as her sole heir), plus 2/12 from George (the father's fictitious share, Secs. 3378, 3379), or 11/12, and (b) if the father did survive James, and then died, the stepmother, as widow, would, as the father would then be childless, take ½

(Sec. 3379) of ½ of 11/12, or 11/48. The stepmother, therefore, took 1/12 plus 11/48, or 15/48 of all the lands of her stepsons.

COURTS: Stare Decisis—Rule of Property—Descent and Distri-
2 bution. Decisions confirming a rule of property and adhered to for many years will not be reconsidered. So held with reference to decisions determining the rules of descent and distribution of property.

DESCENT AND DISTRIBUTION: Shares of Heir—Stepmother as
3 Heir of Stepson. The share of a stepmother in the estate of her stepson, who dies intestate, unmarried, and without issue or surviving parents, is measured by what she, as widow, would have received had the father of the stepson momentarily outlived his son, and died owning one half of the property of his son. (Secs. 3366, 3378, 3379, Code, 1897.)

PRINCIPLE APPLIED: See No. 1.

DESCENT AND DISTRIBUTION: Determination of Heirs—Former
4 Conveyance by Heir to Intestate—Effect. One may be heir to the very property formerly sold and conveyed by him to the intestate.

PARTITION: Attorney Fees—When Allowed. Attorney fees cannot
5 be allowed at the expense of the common property when the title to the property is in issue, each litigant being represented by an attorney of his own choosing.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

WEDNESDAY, NOVEMBER 24, 1915.

SUIT in partition resulted in a decree awarding Hannah Hanley 17/72 of the estate of the intestates. She appealed, as did the heirs.—*Modified* and *Affirmed.*

*Hugh Brennan* and *Robert O. Brennan,* for plaintiffs.

*J. L. Mahoney,* for Thomas C. Hanley *et al.*

*John T. Conroy,* for Bert Keyes and in his own behalf.

*Bowen & Alberson,* for Hannah Hanley.

LADD, J.—James and George P. Hanley died intestate on July 2, 1912, seized of real estate in Polk and Dallas Counties.

The immediate cause of their death was a collision between an automobile, in which they were riding, and a railway train. George P. Hanley died at about 11 o'clock in the forenoon and James Hanley survived until about 2 o'clock in the afternoon. Neither had ever married. They were the only children of James Hanley, Sr., and his wife, Mary, whose name prior to marriage was Keyes. The wife died, and subsequently, on November 2, 1879, he married Hannah Donahue, who survived him as widow and has not married again. By this last marriage, there were no children. The estate of James Hanley, Sr., who departed this life February 27, 1897, was settled amicably between the surviving widow and children. Shortly before the death of James Hanley, Sr., she joined him in the execution of a warranty deed to James and George P. Hanley of some of the real estate involved in this suit, and, on the 17th day of June, 1901, she executed to the same grantees a warranty deed for an undivided one-third interest in real estate described in the deed, receiving from them, at the time of its execution, $7,800. In this suit, partition of the real estate left by James and George P. Hanley is sought, and the only issues raised are (1) whether the widow of James Hanley, Sr., is entitled to any part thereof, and (2) if so, what part. The parties, other than the widow, whom we shall refer to as appellants, insist that she has no interest in the land and that, if she has, this does not exceed 17/72, the portion to which she was decreed entitled by the district court; while she contends that she should have been awarded 15/48 of the estate.

I. The disposition of the estates of deceased persons is regulated solely by statute. *Shick v. Howe*, 137 Iowa 249. Where an intestate leaves no issue nor surviving spouse, the estate passes to the parents. Code Secs. 3379, 3380. Our decision depends on the construction to be given Sec. 3381 of the Code, which declares that: "If both parents are dead, the portion which would have fallen to their share by the above rules shall be disposed of in the same manner as

1. DESCENT AND DISTRIBUTION: determination of heirs: unmarried intestate without issue: stepmother.

if they had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, and so on, through ascending ancestors and their issue."

The argument of appellants proceeds on the theory that this statute casts the descent on the legal heirs of the deceased parents. Were this true, there would be some ground for saying that the widow of a deceased parent was not such heir and might not take. *Will of Overdieck*, 50 Iowa 244; *Blackman v. Wadsworth*, 65 Iowa 80. But those who are to take are not so nominated. The design of the statute is to lay down a rule by which the heirs of the intestate shall be ascertained. How? By learning who would have taken the estate if the parents of the intestate had outlived him and died in the possession and ownership of the property; and the persons who would thus have taken are, by this statute, declared the heirs of an estate of a person who has died without spouse or issue, and such persons take directly, and not through the parent. This is the purport of decisions somewhat relied on by appellants. See *Lash v. Lash*, 57 Iowa 88; *Wilcke v. Wilcke*, 102 Iowa 173; *In re Hulett's Estate*, 121 Iowa 423.

The fiction of the parents' outliving the intestate is solely for the purpose of casting the descent. Had the parents thus survived the intestate, they would have shared the estate equally, under Sec. 3379 of the Code, and one half thereof would, under Sec. 3381, quoted above, be disposed of as though each had outlived the intestate. This necessarily is so; for those who would take of the wife's estate are not the same as those who would be entitled to take that of the husband, unless they leave joint descendants only. Under appellant's theory, both parents are not only to be supposed to have survived the intestate, but to have survived either in the same relation as when in life, or unconnected by affinity; for in no other way may this statute be construed to cast the descent on those related by blood only. If the first were the rule, then the children of either parent by a subsequent marriage who might have survived the other might not participate

in the estate, even though it must be disposed of as though their father had died in its possession and ownership. The contrary appears from *Neeley v. Wise*, 44 Iowa 544. If the parent is to be presumed to survive alone without any pre-existing tie save that of blood, then the statute should be construed as contended by appellants. The fiction of the statute extends no further than the supposition that the parents—that is, each of them—outlived the intestate who has died without spouse or issue, and cannot be construed to contemplate also the continued relation of the parents as husband and wife until subsequent to the intestate's death. It is each parent, and not the relationship of one to the other, who is to be supposed to have outlived the intestate, in order to ascertain the heirs of the latter. Had Mary Hanley, the mother, outlived these sons, she would have inherited one half of the estate left by them, and this would have passed to her heirs. The other half would have been inherited by James Hanley, Sr., had he survived them; and had he done so, he must have had a living wife, Hannah, and the property on his death would, under the law, be disposed of by passing one third or one half to his surviving widow and the remainder to his heirs. Such was the interpretation of the statute in *Moore v. Weaver*, 53 Iowa 11, adhered to in *In re Estate of Parker*, 97 Iowa 593; and as these decisions confirm a rule of property adhered to for nearly forty years, we shall not reconsider the question. We remark, however, that there is nothing in the blood line which should constrain the courts to so construe a statute in its interest as to defeat the legislative design to recognize the natural ties of affection in the distribution of property. Reasons may exist and be thought adequate for preferring the stepmother, in part at least, to distant relatives by consanguinity, who often have had little in common with the deceased in his lifetime, or were entirely unknown to him. What would have been our conclusion, were the statute before us for the first time, is not worth knowing. It is enough to say that, following uniform precedent, we regard the prior

2. COURTS: *stare decisis:* rule of property: descent and distribution.

decisions, laying down an important rule of property, as controlling.

II. Each of the intestates died seized of an undivided one half of the lands in suit. Upon the death of George P. Hanley, some hours prior to the death of James Hanley, his one half of the estate passed to heirs to be ascertained under Sec. 3381 of the Code, as construed above. One half thereof, or one fourth of the entire estate, passed to James, then the sole heir of Mary, the mother of George, and the other one half, or one fourth of the entire estate, to those to whom it would have been disposed of had James Hanley, Sr., outlived George and died in possession and ownership thereof. Had he thus survived, he would have left a widow, Hannah Hanley, and a son, James Hanley, Jr. The latter would have taken two thirds of one fourth, or one sixth, and the widow, one third of one fourth, or one twelfth, of the entire estate. Upon the death of James Hanley, Jr., this one sixth, plus the one fourth inherited from George and the one half owned by himself, or eleven twelfths, passed to heirs to be ascertained under this statute; that is, one half thereof, or eleven twenty-fourths, to the heirs of the mother, Mary Hanley, and the other half, or eleven twenty-fourths, to be disposed of as though the father, James Hanley, Sr., had outlived James Hanley, Jr. Had he done so, he must have died without issue, and his widow would have taken one half, under Sec. 3379 of the Code, instead of one third, under Sec. 3366. The former statute reads:

3. DESCENT AND DISTRIBUTION: shares of heir: stepmother as heir of stepson.

"If the intestate leaves no issue, one half of the estate shall go to the parents, and the other half to the spouse; if no spouse, the whole shall go to the parents."

"Sec. 3366. One third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or any other judicial sale, and to which the wife had

made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him.  . . ."

There is no room for construction; for, under the plain language of the statute, one half of the estate of a person dying without issue passes to the surviving spouse, and his property would have been so disposed of had James Hanley, Sr., outlived James. This was avoided by the trial court by assuming that James Hanley, Sr., would not have died without issue, though this was contrary to the conceded facts. There is no escape, on the record as made, from the conclusion that Hannah Hanley, the stepmother, was entitled as heir to one half of what James Hanley, Sr., would have inherited from James, or eleven forty-eighths. This, added to the one twelfth inherited from George, makes fifteen forty-eighths of the estate, and she should have been decreed the owner of such portion of the estate of the intestates.

III. Undoubtedly, Mrs. Hannah Hanley conveyed to the intestates all her interest in the lands in controversy, and, as is claimed, fully settled with them all claims she may have had as widow of their father, from whom they derived title. But this in no manner obviated her right to inherit from them, as heir, property from whatsoever source acquired by them.

**4. DESCENT AND DISTRIBUTION:** determination of heirs: former conveyance by heir to intestate: effect.

IV. The court ordered fees to be fixed by the court for plaintiff's attorney to be paid out of the proceeds of the sale of the lands, excepting the interest of Hannah Hanley. Objection is raised because of this exception. We know of no reasons for saddling on one party to this suit the burden of paying attorney fees in behalf of others, and these for services rendered in undertaking to defeat the claims by the party sought to be charged. The issue was whether the stepmother was an heir of intestate, and, if so, the portion she should inherit; and in such a case it is quite enough that she pay the attorneys whose services are

**5. PARTITION:** attorney fees: when allowed.

rendered in her behalf. *Hawk v. Day,* 148 Iowa 47; *Oziah v. Howard,* 149 Iowa 199; *Convey v. Murphy,* 154 Iowa 421; *Schoonmaker v. Schoonmaker,* 154 Iowa 500. There was no error here.

No exception is taken to the order in so far as it relates to the shares of others.

*Affirmed* on appeal of plaintiffs and defendants other than Hannah Hanley. *Modified* and *affirmed* on appeal of Hannah Hanley.

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.