R. E. CUMMINGS, Administrator, Appellee, v. NELLIE J. WOOD, Appellee; BESSE WOOD CUMMINGS, Appellant.

**HUSBAND AND WIFE:** Dower Barred by Antenuptial Contract. A wife's claim to a distributive share of her husband's property is fully barred by an antenuptial contract which provides that, upon the death of the husband, the wife shall have the *income* from a named fractional part of the property of which the husband dies seized, but that the husband shall have the right to dispose by will of the *principal* of the estate. *In order that an antenuptial contract may bar the right to a distributive share, it is not necessary to say expressly that such share is relinquished.*

*Appeal from Jasper District Court.*—D. W. HAMILTON, Judge.

SEPTEMBER 28, 1923.

Opinion on Rehearing June 24, 1924.

Action by R. E. Cummings, as the administrator of the estate of E. F. Wood, for instructions in the distribution of the property in said estate under and by virtue of the provisions of an antenuptial contract entered into between Nellie J. Wood, née Hays, and E. F. Wood. The opinion sufficiently states the facts. From the decree entered, the defendant Besse Wood Cummings, the only heir at law of E. F. Wood, appeals.—
*Reversed.*

*Bert B. Welty* and *Herbert A. Huff,* for appellant.

*M. E. Penquite* and *Korf & Korf,* for appellees.

De Graff, J.—Plaintiff R. E. Cummings, as administrator of the estate of E. F. Wood, instituted this action to have construed the provisions of an antenuptial contract entered into between E. F. Wood and Nellie J. Hays on June 3, 1920. The contract reads as follows:

"In view of marriage, we enter upon the following agreement: .

"First: That in case of separation before the death of either, no claim on the other's property will be made by either.

"Second: That in case of the death of E. F. Wood before the death of Nellie J. Hays, she shall receive during life the interest on the one-half of the wealth he owns at death, the interest on the other half to go to his only daughter, Besse, during her life; and the principal to be disposed of after the death of Nellie J. Hays and Besse as E. F. Wood shall by will direct.

"Third: That in case of the death of Nellie J. Hays, E. F. Wood will make no claim to any of her property."

The contracting parties were married June 20, 1920, and lived together until the death of E. F. Wood, on November 3, 1920. No children were born to this union. The defendant-appellant Besse Wood Cummings is the only child of E. F. Wood by a former marriage.

The court below found and decreed that, under the terms of the antenuptial contract, Nellie J. Wood, as the surviving widow of E. F. Wood, was the owner of and entitled to receive

in absolute title, under the law, the one third in value of the whole of said estate, real or personal, as her statutory distributive share, and was further entitled to receive under said contract the income from the undivided one sixth in value of said estate, whether real or personal, for the term of her natural life. It was further determined that the appellant Besse Wood Cummings was the owner of the other undivided one half, absolutely, and that the other one sixth of the said estate became the property of the appellant upon the death of Nellie J. Wood.

Did the trial court err in determining that Nellie J. Wood was entitled to an undivided one third of her husband's estate as a distributive share, and in addition the income for life upon one sixth of the estate? Does the contract give to the surviving spouse, Nellie J. Wood, the use and income of one half of the estate of decedent during her life, and no more?

An antenuptial contract is in the same category as other contracts, and is construed by the same rules as other contracts. *In re Estate of Uker*, 154 Iowa 428. If fair on its face and free from fraud, it is as legal and enforcible as other contracts. *Lungren v. Lungren*, 197 Iowa 519; *Rankin v. Schiereck*, 166 Iowa 10; *In re Estate of Devoe*, 113 Iowa 4. Its primary purpose is to make a property settlement before marriage between the parties, whereby their rights respectively are determined independently of the marital statute, and which would otherwise obtain. In construing such a contract, the intention of the parties is the thing indispensable to be discovered, and in searching for the intent, an antenuptial contract, like a will, is to be taken by its four corners. In a study of the instant agreement, the following points are noticeable.:

(1) The terms were expressly agreed upon in view of marriage; and it must be presumed that both parties acted with knowledge of the existing statute, defining their rights respectively upon marriage and the subsequent death of either. In other words, it must be presumed that the contract as executed was executed with knowledge that its terms were not within the purview of the rights defined by statute covering the marital relation.

(2) She consented to his disposal of the corpus of the estate by will, which was an express recognition by her of a life

estate only, and an admission on her part that she had no interest in his estate other than the right to receive income thereon for a defined period.

(3)   The terms of the contract are inconsistent with the statute defining her rights as a surviving spouse in his estate of which he died seised.

There is no ambiguity in the instant contract.   Upon the death of E. F. Wood, the surviving spouse was to receive "during life the interest on the one half of the wealth he· owns at death." Under the statute, and without reference to her rights as defined by contract, she was entitled to one third in fee of all his estates, legal or equitable.   The terms of the contract and the statutory provision are inconsistent.   Clearly, it was not intended that she should take something in addition to her distributive share, nor is it "credible that they deliberately went to work to provide by contract that the widow should have just such right as the law would give her without contract." *Jacobs v. Jacobs,* 42 Iowa 600.   The fact that E. F. Wood reserved the right in the contract to dispose by will of the corpus of the estate does not, in any sense, enlarge the rights of the surviving spouse, as fixed by the contract, nor did the failure of E. F. Wood to exercise this right operate to enlarge her contract.   It may also be observed that the provision of the contract with respect to the "other half" to his only daughter Besse is neither binding upon the estate of E. F. Wood nor upon Nellie J. Wood. Besse was not a party to the contract.   This provision is surplusage.   It is not testamentary.   It simply indicates an intention, which in fact remained unfulfilled, to dispose as he deemed best of the remainder of his estate after the life estates had terminated.

The intention of the parties must be determined from the language of the instrument itself, the circumstances and conditions of the contracting parties, the property existent at the time of entering into the contract, and other matters which would constitute the inducement or reason for the making of the antenuptial agreement. *In re Estate of Hubinger,* 150 Iowa 307.

E. F. Wood was an old man, with one living child.   Nellie Hays was a school-teacher, previously married, but without children.   She had savings in the sum of $5,000.   He was possessed

of about $30,000 worth of property, which he had accumulated through hard work and the practice of thrift and economy. He had observed the economic law that capital grows as the result of savings, and had refused to discount the future for the sake of present pleasures. His daughter was married. Undoubtedly he felt that a helpmate would make more pleasant his remaining years, and having met the appellee, proposed marriage. Before that status was assumed by them, he said, in substance:

"If we marry, and should separate, each shall keep his own property. If you die before I do, your heirs shall have your property. If I die first, you shall have the use of one half of my property during the time you live. I will do with the remainder as I please."

This agreement was reduced to writing by Nellie J. Hays and first signed by her. It was a fair contract, and its validity is not questioned. Agreements of this character are looked upon by the courts with favor, and are liberally interpreted to carry out the intentions of the parties thereto. Clearly, it was the intention that the only interest in his property that Nellie J. Hays was to have in the event of his death was what the contract stipulated, to wit: the use of one half during the remainder of her life. Her right to inherit or to take statutory rights is barred by the agreement; and the fact that the contract is silent that the provision made for the spouse is in lieu of her distributive share cannot enlarge the contractual provision.

In *Collins v. Phillips,* 259 Ill. 405, it is said, in construing an antenuptial contract:

"It was not essential that the instrument should say, in express terms, that he released his right to inherit."

In *Talbot v. Calvert,* 24 Pa. St. 327, the court said:

"Where it [the contract] indicates, in terms tolerably clear, that the husband intended to relinquish all the rights which he had or could have in his wife's property, not only during but after the coverture, then it descends to her next of kin, and they take it under the intestate laws, just as if she had never been married."

An antenuptial contract is purely voluntary; and unless the intendment is clear, the surviving spouse is not entitled to both statutory rights and the benefit of the provisions of an

antenuptial contract. In *Shaffer v. Shaffer*, 90 Ind. 472, the opinion reads:

"The undisputed evidence in the record shows that the only title the appellee had to the land in question was such as she acquired by the antenuptial contract, and such in addition, if any, as she was entitled to as the widow of such decedent. If she were not entitled to any interest as widow, in addition to one third for life, secured to her by such contract, the finding was not sustained by the evidence, and a new trial should have been granted. This contract was before this court in the case of *Shaffer v. Matthews*, 77 Ind. 83, where it is fully set forth, and to which reference is made. It was held in that case that the appellee's rights were limited to the provisions made for her by the contract, and that she was not entitled to take in addition thereto under the law."

In the case of *Shaffer v. Matthews*, supra, there was no express relinquishment of the dower right. The single question presented is whether the agreement constituted a bar to her claimed right. The opinion reads:.

"The instrument is awkwardly drawn and incorrectly worded; but there is enough in it to clearly show that the purpose of the parties, in executing it, was to make full provision for appellant in the event of her becoming the widow of the man whom she expected to marry. There can be no doubt that the man intended to limit and define the interest which the woman whom he expected to make his wife should take in his property, should she survive him; nor can there be any doubt that the woman accepted the provision so made for her. The right of the woman to retain absolute ownership and control of her separate property, the provision that she should take one half of all her husband's personal property, at his death, and enjoy during life the farm of the husband, are plainly stated, and so stated as to distinctly show an intention to make provision for the woman, in case she became a widow, different entirely from, and in lieu of, that made by statute. It is very evident, from the whole tenor of the contract, that it was not intended that the woman should take both under the contract and under the law. There is, of course, no question of election; for the antenuptial contract settled and adjusted the rights and interests of the

parties, leaving nothing open to choice, upon the death of either.''

That the language of the opinion may be read in the light of the articles of agreement in the Indiana case, we quote the material provisions:

''Whereas a marriage is intended to be had and solemnized between the said David Shaffer and Elizabeth Cobb, the party of the first part, * * * doth covenant and agree to and with the said Elizabeth Cobb, his intended wife, in case the said intended marriage shall be had and solemnized between the parties, that, at his decease, should she outlive him, the party of the second part shall be entitled to one half of the personal property by them possessed after the debts, should there be any, are paid, and also the one third of the rents and profits of the farm on which I live, to her own proper use during her natural life,— at her decease to go to my heirs. * * * It is agreed between the parties, that the property of the party of the second part shall remain her own to do as she thinks fit with.''

We are not interpreting a will or dealing with an election of rights, but our legislative policy as applicable to wills may well be noticed, as we are attempting to discover the intention of the parties, so far as it involves the disposition of rights in property. Under Code Section 3270, it is presumed, unless the intention is clear and explicit to the contrary, that a devise of property is in lieu of the distributive share, homestead, and exemptions. See *In re Estate of Emerson,* 191 Iowa 900. It is not necessary to say expressly, in an antenuptial contract, that the distributive share is relinquished; it is sufficient if such intent can be inferred from the instrument. The very purpose in the execution of such a contract is to fix and determine the interest that the parties have respectively in the property of the other.

In *Naill v. Maurer,* 25 Md. 532, a petition in equity was filed by the appellee for an allowance of dower in the real estate of which her husband, Paul Maurer, died seised. The appellant, in answer, by way of defense, claimed that her right to dower was barred by an antenuptial contract with the husband. The question decided depended upon the true operation and effect of that instrument. The opinion reads:

''The contract was made in contemplation of marriage, and, as clearly appears, was intended to bar or prevent the acquisition thereby of any right by either in the property of the other, in order that the marriage proposed might take place. The main object in view was the consummation of the marriage, and it was to that end that the contract was executed. * * * Her power to bind herself by such a contract, in equity, must be admitted, and we do not doubt that this contract constitutes an equitable bar to the claim sought to be enforced by this bill. The authorities upon this point are full and conclusive.''

Our statute reserves to the widow the absolute right to one third of his property, which cannot be taken away by her husband unless she consents thereto, either by an antenuptial contract with him or, in the absence thereof, by her consent to such provision after his death. If the distributive share is waived by the execution of an antenuptial agreement, the death of the husband will not restore that which never existed. His property undisposed of at death vests in his heir at law.

We cannot escape the conclusion that the appellee herein, as the surviving spouse, has no other or different interest in the estate of E. F. Wood than the life interest defined in the contract. Wherefore the judgment entered by the district court is— *Reversed.*

EVANS, STEVENS, and VERMILION, JJ., concur.