MAUDE PEET et al., plaintiff-appellees, v. HELEN MONGER et al., appellants; DORA BERNDES et al., defendant-appellees; KENNETH SNYDER et al., defendants.

No. 48094.

(Reported in 56 N.W.2d 589)

JANUARY 13, 1953.

J. J. Locher, Jr., and Thomas H. Pirnie, of Barnes, Wadsworth, Elderkin & Locher, both of Cedar Rapids, for appellants.

George C. Claassen and William O. Claassen, both of Cedar Rapids, Ralph Wilson, of Monticello, and James T. Remley, of Anamosa, for plaintiff- and defendant-appellees.

BLISS, J.—On August 29, 1905, Edward Snyder and Stella M. Heitchen, both of Anamosa, Iowa, just before their marriage, entered into and acknowledged the execution of a written antenuptial contract, which was recorded on August 30, 1905, in the office of the recorder of Jones County, Iowa, in which county they lived. They were middle aged and probably did not contemplate there would be any issue of the marriage, and there was none. Her father, mother and husband predeceased her, and she died spouseless, parentless, childless, without brothers or sisters, and intestate, in 1945.

No heirs on her father's side were found. She had heirs on her mother's side consisting of several cousins of different degrees of kinship. They are spoken of in the record as the "Heitchen" heirs. We will refer to them as the Heitchens. They are appellees herein. The heirs of intestate's deceased husband we will refer to as the Snyders.

Apparently without knowledge of the antenuptial agreement, Maude Peet and James F. May, both being Heitchen heirs, and each owning an undivided $\frac{1}{84}$ interest in the intestate estate, with their spouses, on April 24, 1948, filed the petition in this

suit. They named as defendants both the Heitchen and the Snyder heirs, and designated their respective fractional interests from $\frac{1}{12}$ to $\frac{1}{392}$. The state of Iowa was impleaded as a defendant, with all other parties asserting that it took nothing by way of escheat. All was harmonious between the two sets of heirs, and on October 1, 1948, decree was entered dividing the estate equally between the two sets of heirs and confirming the respective undivided interests as pleaded, and referees were appointed to sell the real estate, consisting of 226 acres of land and the Anamosa property, and to divide the proceeds of sale.

The Heitchens then discovered the antenuptial contract, and some of them, who had been served with notice of the suit by publication and had not appeared in the suit, on March 29, 1949, under rule 251 of R. C. P., filed application for retrial and vacation or modification of the decree because of the antenuptial contract and of errors thereby resulting in the division of the property. The relief was granted and appropriate pleadings were filed by both the Heitchens and the Snyders. The latter alleged that while the antenuptial contract barred Mr. Snyder during his life of any interest in his wife's property, and that since he died before she did, he, of course, could assert no interest in her estate whether she died testate or intestate, nevertheless, they alleged that the contract did not bar them, since under section 636.41 of the 1946 Code they were making claims to Mrs. Snyder's estate, not as heirs of Mr. Snyder, but as heirs of Mrs. Snyder.

The Heitchens moved to strike this alleged defense from the pleadings, and on August 17, 1950, filed their first application for an adjudication of this issue as a point of law under rule 105 of R. C.P. On January 19, 1951, the court ruled in favor of the Heitchens on their application.

The Snyders, with permission of the court, on March 16, 1951, amended their various pleadings previously filed by adding to each a new division, as follows:

"Par. 1. That on February 11, 1912, A. Heitchen of Anamosa * * *, the father of Stella Heitchen, died a resident of Jones County, Iowa.

"Par. 2. That on the 24th day of February, 1934, Stella H. Snyder conveyed by warranty deed to herself and her husband,

Edward C. Snyder, as joint tenants and not as tenants in common, with the full right of the survivor to take the whole title and right of property of both in fee simple and absolutely, all, or substantially all, of the real estate which she then owned; that said deed was filed for record in the office of the Recorder of Jones County, Iowa, on November 26, 1935, in Book 96, page 224 * * *.

"Par. 3. That the execution, delivery and acceptance of the deed * * * operated to effect a mutual rescission, abandonment and revocation of the antenuptial contract * * *.

"Par. 4. That the said Stella H. Snyder, by the execution and delivery of said deed, relieved and discharged Edward C. Snyder from any duties and obligations under the prior antenuptial agreement herein referred to, and did waive thereby his performance of any duties and obligations under said antenuptial contract."

Attached to the pleading as an exhibit was the copy of the deed which recited the conveyance, as alleged in paragraph 2 of the pleading, of 440 acres of land in Jones County, Iowa, for a paid consideration of one dollar.

After various pleadings challenging the filing of the amendment, among which was a motion to strike it, the Heitchens, on June 30, 1951, filed a second application for adjudication of law points under said rule 105 of R. C. P. additional to the application filed on August 17, 1950. The ground of the second application was that the matters pleaded were irrelevant and immaterial and had no essential or material bearing on the force or effect of the antenuptial contract; that nothing was pleaded indicating any agreement, oral or in writing, or any circumstances tending to show that the parties to the contract intended to cancel or rescind it, and that the said deed was but a contingent gift of property, which Mrs. Snyder could properly make without nullifying the antenuptial contract. On December 27, 1951, the court again ruled favorably for the Heitchens and adversely to the Snyders. The latter appealed on the adjudications as decreed on January 19, 1951, and on December 27, 1951.

The antenuptial contract stated:

"WHEREAS, the said parties hereto contemplate and have

entered into a contract to enter the marriage relation, Now THEREFORE, in consideration of said contract and of one dollar paid by each to the other it is mutually agreed between them—

"First: That the said Stella M. Heitchen shall have the right to manage, control, encumber, sell and convey all the property she now owns, real and personal, and all she may hereafter acquire, as fully and completely as if she remained unmarried, and all contracts, conveyances, and encumbrances of the said party shall have the same effect and force as if the said Edward Snyder had joined with her in the same.

"Second: Said Stella M. Heitchen shall have the right to devise, will and bequeath all her property, real and personal, in case of her death, the same as if she remained unmarried, and in case of her death, intestate, the said Edward Snyder hereby relinquishes any and all claims or interest therein, including dower or distributive share therein, and the same shall descend to the legal heirs at law of the said Stella M. Heitchen the same as if said marriage relation had never been contracted.

"Third: It is further agreed between the above named parties that A. Heitchen, of Anamosa, Iowa, father of said Stella M. Heitchen, shall manage and control all the property interest, real and personal, of the said Stella M. Heitchen during his lifetime."

The Snyders, appellants, rely for reversal upon the following asserted errors of the court, namely:

1. In striking from appellants' pleadings the defense that the antenuptial contract in no way affected the casting of descent, or the determination of the interest of the Snyder heirs in the real estate involved, as fixed by the applicable Iowa statutory rules of descent and distribution.

2. In striking from appellants' pleadings the defense that the antenuptial agreement was not executed and witnessed as a testamentary instrument, and therefore it could not have the effect of altering, modifying or rendering inoperative the said statutory rules determining descent and distribution.

3. The trial court committed compound error in holding that the phrase "such heirs taking by right of representation", stated at the end of section 636.41, Code of 1946, had application under the instant facts, and that the heirs determined under said

section take from the intestate subject to the infirmities of the deceased spouses through whom descent is cast.

4. In striking from appellants' pleadings the defense that the antenuptial agreement, upon the death of Edward Snyder before the death of Stella Heitchen Snyder, became inoperative and of no further force and effect.

5. In striking from appellants' pleadings the defense that the execution and delivery of the joint-tenancy deed operated to effect a mutual rescission, abandonment and revocation of the antenuptial contract, thus discharging Edward Snyder from any duties or obligations.

The first four errors, which appellants urge were committed by the court, arise because of the court's adjudication decreed on January 19, 1951. We will discuss these errors together, and not singly, since they all bear upon the points of law and issues involved in the first application.

I. Appellants cite and discuss authorities which hold that under the statutory rules of descent and distribution of intestate property in chapter 636, Code of 1946 (being the applicable Code in this case), the persons upon whom descent is cast thereunder take directly as heirs of the intestate and not as heirs of the person or persons through whom descent is cast. They contend that the legal fiction of the momentary resurrection of the deceased ancestor as provided in 636.40 of said Code is for the sole purpose of identifying the heirs of the intestate and determining the extent of the inheritance.

Appellants cite in support of these contentions the following cases: In re Estate of Ramsay, 241 Iowa 715, 42 N.W.2d 386; Lash v. Lash, 57 Iowa 88, 10 N.W. 302; In re Estate of Fairchild, 231 Iowa 1070, 3 N.W.2d 157; Henkel v. Auchstetter, 240 Iowa 1367, 39 N.W.2d 650; In re Estate of Eason, 238 Iowa 98, 26 N.W.2d 103; McAllister v. McAllister, 183 Iowa 245, 167 N.W. 78; Caulfield v. Noonan, 229 Iowa 955, 295 N.W. 466; In re Estate of Bradley, 210 Iowa 1013, 231 N.W. 661; In re Estate of Clark, 228 Iowa 75, 290 N.W. 13; 16 Am. Jur., Descent and Distribution, 777, 778, 939, 940; Coomes v. Finegan, 233 Iowa 448, 7 N.W.2d 729.

We are in no disagreement with the principles of law and of statutory construction contended for by appellants as stated

above, nor with the decisions of the court in the cases cited. This court has announced like holdings in other cases. See Moore v. Weaver, 53 Iowa 11, 3 N.W. 741; In re Estate of Parker, 97 Iowa 593, 596, 66 N.W. 908; Wilcke v. Wilcke, 102 Iowa 173, 71 N.W. 201; In re Estate of Hulett, 121 Iowa 423, 96 N.W. 952; Lawley v. Keyes, 172 Iowa 575, 154 N.W. 940; In re Estate of Farrell, 205 Iowa 331, 217 N.W. 876; In re Estate of Fitzgerald, 223 Iowa 141, 272 N.W. 117; Boyd v. Feedan, 192 Iowa 1036, 185 N.W. 995.

Appellants also insist that the right of the heirs who are thus identified to take is in no way affected by an incapacity to take on the part of the person whose resurrection is assumed. Whether this is true may depend on the nature of the incapacity or how it arose.

The incapacity arose in this case because of the antenuptial contract which Edward Snyder made with Stella Heitchen. There is no statute in Iowa prohibiting such contracts, and the courts will uphold them if they are fair between the parties and fairly, freely and understandingly entered into, by persons legally competent to contract, and they do not violate the rights of others at the time made. This is the holding of courts generally. 41 C. J. S., Husband and Wife, section 80, pages 554, 555. Such property agreements or settlements, when within the requirements above noted, are favored by public policy, the law and the courts, as conducive to the welfare of the parties and the beneficent purposes of the marriage relation. 26 Am. Jur., Husband and Wife, section 273, page 881; 41 C. J. S., supra, section 76, page 552. This court has uniformly so announced and repeatedly held that they should be liberally interpreted to carry out the intentions of the parties. They are entitled to the same consideration and construction as other contracts. The vital matter to be ascertained is the intention of the parties. In seeking that intent, as in seeking the intent of the testator, the antenuptial contract, as the will, must be taken by its four corners and studied as a whole. The intention must be determined from the language of the instrument, the surrounding circumstances and the conditions of the parties. Lungren v. Lungren, 197 Iowa 519, 521, 197 N.W. 646; Cummings v. Wood, 197 Iowa 1356, 1358–1360, 199 N.W. 369; In re Estate of Onstot, 224 Iowa 520, 525, 526, 277 N.W. 563; In re Estate of Shepherd, 220 Iowa 12,

19, 21, 261 N.W. 35; Jacobs v. Jacobs, 42 Iowa 600, 605, 606; In re Estate of Mansfield, 185 Iowa 339, 342, 170 N.W. 415; Ditson v. Ditson, 85 Iowa 276, 282, 283, 52 N.W. 203; In re Estate of Parish, 236 Iowa 822, 830–832, 20 N.W.2d 32; Christians v. Christians, 241 Iowa 1017, 1021, 44 N.W.2d 431; Rankin v. Schiereck, 166 Iowa 10, 15, 147 N.W. 180; In re Estate of Thorman, 162 Iowa 316, 320, 321, 144 N.W. 5; O'Dell v. O'Dell, 238 Iowa 434, 455, 26 N.W.2d 401. The decisions of this court, as noted above, are in conformity with those of courts generally. See 41 C. J. S., Husband and Wife, section 102, page 575, where it is also said:

"Liberal construction will be given to marriage settlements in order to carry out the intention of the parties. The court will not be bound by technical rules and where necessary to carry out the presumed intent of the parties will use greater liberality of construction than in the case of wills or deeds. Manifest intention will prevail over doubts which might be raised by strict grammatical construction."

■■ There is no issue in the case that as between the parties to the contract it was not fair, nor freely and fairly entered into, nor that they were not competent to so contract. The record does not show the relationship of the appellants to Edward Snyder. They were not his heirs when the contract was made because a living person has no heirs. They may have been among his possible or potential heirs, but he violated no property rights of theirs by executing the antenuptial contract. They had no vested rights in the property involved. Under the circumstances, as the husband of his prospective wife, he could do as he pleased in the disposition of his statutory rights in her property, and sign them away if he so desired. By the provisions of the antenuptial contract that is what he did, with respect to his rights during marriage and thereafter. Appellants concede this. Such is the usual purpose of premarriage settlements. Their terms are inconsistent with the statute defining the rights of a spouse during marriage or as a surviving spouse. Under such a contract the rights of each spouse to inherit, or to take a distributive share, or other statutory rights in the property of the other are barred. These rights which Edward Snyder would have had in

the absence of the antenuptial contract were extinguished by it. This court has consistently so held. Finn v. Grant, 224 Iowa 527, 532, 533, 278 N.W. 225 (in which, under a contract worded similarly to the one before us, the court held that the property descended to the "natural heirs of the wife"); In re Estate of Thorman, supra, 162 Iowa 316, 321; In re Estate of Mansfield, supra, 185 Iowa 339, 343, 344; Nesmith v. Platt, 137 Iowa 292, 298, 299, 114 N.W. 1053; Jacobs v. Jacobs, supra, 42 Iowa 600, 605, 607; Cummings v. Wood, supra, 197 Iowa 1356, 1360, 1362, 1363 (where we said: "It is not necessary to say expressly, in an antenuptial contract, that the distributive share is relinquished; it is sufficient if such intent can be inferred from the instrument. * * * If the distributive share is waived by the execution of an antenuptial agreement, the death of the husband will not restore that which never existed.").

We do not agree with appellants' contention that the antenuptial contract does not bar the Snyder heirs of interest in the intestate's estate. There is no ambiguity in the contract on that point. It so provides by language which hardly could be clearer or more definite. By it the intention of the parties to the contract is unmistakable. It states: "* * * in case of her death, intestate, the said Edward Snyder hereby relinquishes *any* and all *claims* or *interest* therein [meaning all her property], *including dower* or *distributive share therein*, and the same shall descend to the legal heirs at law of the said Stella M. Heitchen *the same as if said marriage relation had never been contracted.*" (Italics ours.) If the statement were "shall descend to the legal heirs at law of the said Stella M. Heitchen", without continuing, it would be a different matter. But those words are qualified and limited by the words, "the same as if said marriage relation had never been contracted." Under the contract her property does not descend to her heirs, generally, or to all her heirs, but it descends only to those who would be her heirs had the marriage not been contracted. In other words it descends only to heirs of her—the Heitchen—bloodline, and eliminates all those who are her heirs because of her marriage, that is, it eliminates the Snyder heirs, the appellants. They never had any inheritable interest in Mrs. Snyder's property. The contract and the marriage prevented it from coming into being. That it should never have an

existence was a condition and a consideration for the marriage. It is the obligation of the courts to sustain the contract.

It is not material whether the Snyder heirs are such by "substitution" or by "representation", as these terms have at times been used by this court. The Snyders are barred from participation in the intestate's property because they would not be heirs if there had been no marriage contracted.

In Cummings v. Wood, supra, 197 Iowa 1356, 1360, the court quoted from Talbot v. Calvert, 24 Pa. St. 327, 330, as follows: "Where it [the contract] indicates in terms tolerably clear that the husband intended to relinquish all the rights which he had or could have in the wife's property, not only during but after the coverture, then it descends to her next of kin, and they take it under the intestate laws, *just as if she had never been married.*" (Italics ours.)

The rule that a spouse can eliminate his or her heirs from participating in the property or estate of his or her spouse is in accord with the rule in analogous cases in which an heir-apparent by contract with his parent or other ancestor releasing his expectancy bars also those claiming under him. Some of these cases are reviewed in Donough v. Garland, 269 Ill. 565, 572, 109 N.E. 1015, 1017, Ann. Cas. 1916E 1238, where the court said:

"From this review of the decisions it will be apparent that a release by an heir presumptive of his expectancy operates as an extinguishment of the right of inheritance, cutting it off at its source. The line of inheritance is ended by the release made by the one having the expectancy at the time, and the release is binding not only upon him but upon those who take as heirs in his place, otherwise a release would often be ineffective. That would always be the case where the one executing the release does not survive the one to whom the release is made although he has himself received the consideration for the expectancy."

See also Crum v. O'Rear, 132 Ill. 443, 24 N.E. 956, 961; McNutt v. McNutt, 116 Ind. 545, 19 N.E. 115, 123, 2 L. R. A. 372; Simpson v. Simpson, 114 Ill. 603, 2 N.E. 258, 4 N.E. 137–141, 7 N.E. 287; Liesse v. Fontaine, 181 Wis. 407, 414, 195 N.W. 393, 396 (in which the court said: "Counsel for appellants make the point that even if the agreement was binding on Mrs. Labby

it was not binding on her children, but the weight of authority is otherwise."). (Citing authorities.)

In 41 C. J. S., Husband and Wife, section 98, page 572, the author states: "By antenuptial agreement a prospective husband may release the interest in the wife's estate which he otherwise would have by reason of the marital relation. Such a contract will exclude him or those claiming under him from participation in her estate after her death."

The able trial court thoroughly reviewed the law and the facts in adjudicating the first application for ruling on law points, and reached a correct conclusion in its summation, to wit:

"Summarizing the foregoing, it is held: that irrespective of whether the taking is by substitution or representation the majority rule is that the contract of the ancestor, whereby he relinquishes all rights to the property of another party and agrees that it may descend as though no marriage was contracted, binds his heirs and extinguishes the rights of any of his heirs in the future; * * * that the heirs-at-law of Stella M. Heitchen Snyder must be determined as if no marriage relation had ever been contracted by her with Edward Snyder.

"Stella Heitchen Snyder having been married only to Edward Snyder, and having never had any other spouse, under the foregoing holding her heirs must be determined as though she had never married, and died intestate without issue. As heretofore pointed out, heirs are found on her mother's side, but no heirs are found on her father's side. This results in a situation which is controlled by the case of In re Tripp's Estate, 239 Iowa 1370, 35 N.W.2d 20. In that case Lucy Tripp, a spinster, died intestate without issue, her father and mother having predeceased her. Heirs of the mother were found, but no heirs of the father, and it was there held that the heirs of the decedent's mother inherited all of the decedent's estate.

"We do not think there is any sound basis to distinguish the present case from the Tripp case."

We think that the order and decree of the trial court was sound and in accord with the law and the facts.

■ II. We find no merit in claimed error No. 2 nor in appellants' proposition that the contemplated contract is not effec-

tive to alter or to supersede any statute determining descent or distribution because it was not executed in the manner required of a testamentary disposition of property. It is the rule of this court, as indicated by the decisions cited herein and of the courts generally, that antenuptial contracts and premarriage settlements may change the descent of property by ordinary contracts executed without the statutory requirements for executing testamentary dispositions.

In McNutt v. McNutt, supra, 116 Ind. 545, 562, 19 N.E. 115, 123, 2 L. R. A. 372, the court said:

"It is unduly assumed that the law absolutely casts upon the wife an estate in the lands of the husband; whereas it does not undertake to do so where by agreement the parties have fixed the rule which shall govern. The law operates in cases where there is no contract, but does not operate where the parties have for themselves agreed upon the mode in which marital rights shall attach. The law does not assume to override the agreement of the parties, but to furnish a rule where there is no agreement."

III. The trial court, though it did not find it necessary to so decide, held that the closing words of section 636.41, Code of 1946, namely, "such heirs taking by right of representation", meant that all persons inheriting under said section took by representation and not by substitution. In view of our holding that the Snyders do not take any of the estate of Mrs. Snyder, either by substitution or by representation, we deem it unnecessary to construe the statutory section on this point and do not pass upon error No. 3.

IV. What we have said disposes of error No. 4. The antenuptial contract was not terminated by the death of Mr. Snyder. One of the reasons of Mrs. Snyder for having the contract was to control the descent of her property after the death of both of them.

V. The second application for a ruling on law points raised the question of whether the joint-tenancy deed with the right of survivorship abrogated the antenuptial contract. The trial court held that it did not and we agree with that conclusion. There is nothing in the record, other than the deed, to

evidence what their intention was with respect to the contract. There was no provision in the deed which expressly effected a cancellation of the contract. It did increase his interest during his life in the property conveyed by the joint-tenancy deed. Under the contract he had no interest in or control over his wife's property. But he must survive his wife before he could get title under the deed. On his death, she, as the survivor, would again have complete title to the land, the same as she had before the deed was given. It was, no doubt, still her wish that if she died intestate her property would go as provided in the contract, that is "to her legal heirs, the same as if said marriage relation had never been contracted." She may have anticipated and appreciated that if she died intestate, and the right of her heirs in her own bloodline to the property was challenged by the Snyder heirs, as it is being challenged, the existence of the contract in full force and effect would be an important factor in behalf of her heirs. In view of the contingent character of the deed there was no inconsistency in keeping the contract in effect. Both instruments could stand together. She had the right to lessen some of her rights under the contract and to keep other rights in full force. One of the purposes of the contract was, though she was married, to give her the same rights with respect to her property, both during her life and at her death, as though she had never married Mr. Snyder. This could be done only by keeping the contract alive. To hold that she intended to abrogate all rights under the contract, there must be clear and satisfactory evidence of definite and unequivocal acts or conduct on her part to that end. We find such evidence to be lacking.

The order, judgment and decree entered on January 19, 1951, and the order, judgment and decree entered on December 27, 1951, are both affirmed.—Affirmed.

OLIVER, GARFIELD, WENNERSTRUM, and HAYS, JJ., concur.

SMITH, C. J., concurs in result.

THOMPSON, J., takes no part.